STATE OF NORTH CAROLINA v. TERRENCE RODRICUS ELLIOTT

No. 184A04

(Filed 5 May 2006)

**1. Jury— selection—prospective jurors over 65**

The premise that the court may excuse a juror merely for being over sixty-five is unfounded in North Carolina law; a prospective juror's age may be a compelling personal hardship, but this is not always so. Although the issue was not properly preserved for appellate review, the trial court's exercise of discretion is apparent from its discussion with prospective jurors over sixty-five and the trial court did not abuse its discretion by refusing to excuse the juror in question. N.C.G.S. §§ 9-3, 9-6(a), and 9-6.1.

**2. Jury— selection—capital trial—questions—cost of life imprisonment—putting aside personal beliefs**

The trial court did not abuse its discretion in a capital trial by not allowing defendant to question prospective jurors about whether they had any preconceived notions about the cost of life imprisonment verus the death penalty. Defendant was allowed to ask whether prospective jurors were inclined to vote for imposition of the death penalty automatically.

**3. Appeal and Error— invited error—not considered**

Defendant invited error with his motion to restore peremptory challenges after a panel of prospective jurors was dismissed for misconduct (a trial court generally has no authority to grant additional peremptory challenges). Any error in granting the motion was not considered on defendant's appeal.

**4. Jury— selection—capital trial—substituting jurors for sentencing phase**

The trial court did not err during jury selection for a capital trial by refusing to seat two jurors opposed to the death penalty for the guilt phase and then substitute death-qualified alternate jurors during the sentencing phase.

**5. Appeal and Error— convictions for first-degree murder and burglary—no motion to bypass Court of Appeals for burglary conviction**

The sufficiency of the evidence of burglary was not properly before the Supreme Court on the direct appeal of the accom-

panying first-degree murder conviction and death sentence because neither party filed a motion to bypass the Court of Appeals. The issue was considered under Appellate Rule 2 because it also concerned an aggravating circumstance.

**6. Burglary and Unlawful Breaking and Entering— breaking and entering during nighttime—sufficiency of evidence—victim found near nightclothes**

There was sufficient evidence of a nighttime breaking and entry in a burglary prosecution. Evidence that the victim was in or near her nightclothes when she was murdered is not dispositive, but it is relevant and can be considered with the other evidence.

**7. Jury— questions for witnesses—submission through judge required**

A trial judge acted within his discretion in requiring a jury to submit questions for witnesses through him in writing rather than asking the witnesses directly. The record clearly indicates that the jurors understood that they were permitted to ask questions of the witnesses by this method.

**8. Discovery— failure to disclose information—defendant not at a disadvantage—no *Brady* violation**

There was no *Brady v. Maryland* violation in a murder prosecution where it was learned at trial that the State had not disclosed to defendant that a witness who had identified defendant in a photo lineup and testified that she had seen a man in the victim's truck could not identify defendant in court. The State reopened its case and recalled the witness, who testified on cross-examination that she was unable to make the in-court identification. Defendant was able to use the information during trial to his advantage, and it is clear from the jury's verdicts that defendant was not adversely affected by the initial nondisclosure.

**9. Sentencing— capital—murder in the course of burglary— evidence sufficiency**

There was sufficient evidence to submit the aggravating circumstance that a murder was committed during the course of a burglary where it was determined elsewhere in the same opinion that the evidence of a nighttime breaking and entry was sufficient.

**10. Sentencing— capital—weighing aggravating and mitigating circumstances—instructions**

The trial court did not commit plain error by instructing the jury in a capital sentencing proceeding to answer Issue Three in the affirmative "if you unanimously find beyond a reasonable doubt that the mitigating circumstances found are insufficient to outweigh the aggravating circumstance or circumstances found."

**11. Sentencing— capital—aggravating circumstances—especially heinous, atrocious or cruel—instructions**

The trial court did not err in instructing the jury concerning the especially heinous, atrocious, or cruel aggravating circumstance by denying defendant's request to have the modifier "especially" repeated in the instruction before both "atrocious" and "cruel."

**12. Criminal Law— jurors praying during recess—motion for appropriate relief denied**

The trial court did not err by denying a first-degree murder defendant's motion for appropriate relief that was based upon two jurors praying together in the lobby during a recess. There is nothing to indicate a discussion or deliberation of any kind, and no evidence that the jurors talked about the case during the recess. Moreover, even if there was misconduct, defendant presented only newspaper accounts and did not present affidavits from potential witnesses, so that there was insufficient documentary evidence to show the required prejudice.

**13. Criminal Law— alleged juror misconduct—motion for appropriate relief denied**

There was no abuse of discretion in the denial of an evidentiary hearing on a motion for appropriate relief arising from alleged juror misconduct. A defendant is not entitled to an evidentiary hearing on a motion for appropriate relief that merely asserts constitutional violations; defendant here did not make an adequate threshold showing of juror misconduct; and defendant did not allege any of the limited matters about which jurors can testify to impeach a verdict, so that none of the jurors defendant proposed to call as witnesses would have been allowed to testify.

**14. Appeal and Error— preservation of issues—state constitutional claim—not raised at trial**

A state constitutional claim not raised at trial was not considered.

**15. Constitutional Law— elected judges—constitutionality**

There was no violation of the U.S. Constitution in the denial of a capital sentencing defendant's motion to assign his post-trial motions to a judge not subject to popular elections.

**16. Sentencing— capital—proportionality**

A death sentence was not disproportionate where defendant raped and strangled the victim in her own home, there was sufficient evidence to support the aggravating circumstances, nothing in the record suggested the influence of passion, prejudice or other arbitrary factors, and no death sentence has been found disproportionate with these two aggravating factors (especially heinous, atrocious, or cruel and commission in the course of a burglary). Moreover, the method of proportionality review is not arbitrary and capricious.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from an order entered on 19 February 2004 denying defendant's Motion for Appropriate Relief from a judgment imposing a sentence of death entered on 18 December 2003, upon a jury verdict finding defendant guilty of first-degree murder, both entered by Judge James M. Webb in Superior Court, Moore County. Heard in the Supreme Court 13 March 2006.

*Roy Cooper, Attorney General, by G. Patrick Murphy and Mary D. Winstead, Special Deputy Attorneys General, for the State.*

*M. Gordon Widenhouse, Jr. for defendant-appellant.*

BRADY, Justice.

On or about 28 January 2001, defendant Terrence Rodricus Elliott murdered Alice Mae McLeod McCrimmon. On 15 December 2003 a jury returned verdicts of guilty against defendant for first-degree felony murder, first-degree rape, and first-degree burglary. On 18 December 2003, the jury returned a binding recommendation of a sentence of death for defendant's first-degree felony murder conviction. Accordingly, the trial court sentenced defendant to death for the first-degree murder conviction, arrested judgment on the first-degree

rape conviction, and sentenced defendant in the presumptive range to a consecutive term of 103 to 133 months for the first-degree burglary conviction. We find defendant received a fair trial and capital sentencing proceeding free of prejudicial error and that defendant's capital sentence is proportionate.

## FACTS

At approximately 10:00 p.m. on 28 January 2001, defendant left the residence of Clifford McLaughlin in Vass, North Carolina, where he had been visiting with McLaughlin and John Bandy. At that time, neither McLaughlin nor Bandy observed defendant carrying any specific items of personal property with him. Defendant then traveled to the home of the victim, Alice Mae McLeod McCrimmon. Ms. McCrimmon was a seventy-seven year old widow living in a mobile home without reliable heating. She was a woman of modest means, carefully saving coins for "wash money" in a purple Crown Royal bag.

Defendant broke a window to Ms. McCrimmon's home, entered her dwelling, and proceeded to rape, beat, and strangle her until she died. During the struggle, she lost control of her bowels, leaving feces on the electric blanket later found on her bed. Defendant's beating of Ms. McCrimmon left numerous blood spatters on the headboard and the walls of her bedroom. Additionally, defendant's beating knocked at least one of Ms. McCrimmon's teeth out of her mouth, and this tooth was later found imbedded in her back. Defendant left two used condoms on the floor and smoked a cigarette, leaving the unfinished butt at the crime scene.

After the murder, defendant returned to McLaughlin's residence, sometime before 12:00 a.m. At this time, as testified to by McLaughlin and Bandy, defendant possessed a purple bag which contained various pieces of jewelry and some change. McLaughlin and Bandy further testified defendant offered to split the money inside the bag with them, with defendant taking all the "silver" money from the bag and giving the pennies to McLaughlin and Bandy.

On 9 February 2001, Ms. McCrimmon's grandson became concerned because no one had heard from Ms. McCrimmon for days. He traveled to her mobile home to find a window broken, the inside of the mobile home in disarray, and the back door open. He entered through the back door, using his flashlight to look around. When he approached Ms. McCrimmon's bedroom, he found her lying on the

floor beside her bed. Ms. McCrimmon's body was completely nude and her left leg was bent underneath the rest of her body. He immediately called law enforcement.

Additionally, Ms. McCrimmon's 1989 Ford pick-up truck was missing from her residence. Michelle McGarrah testified she observed a man moving the truck near a Housing Authority building in Southern Pines on or about 9 February 2001. While McGarrah initially testified that she identified defendant from a police photographic lineup on 9 February 2001, she later testified she could not make an in-court identification of defendant as the man she observed in the truck.

Defendant was eventually arrested, and on 12 March 2001 a Moore County grand jury returned true bills of indictment against him for murder, first-degree rape, first-degree burglary, two counts of felonious possession of stolen goods, and felonious larceny.

Chief Medical Examiner John D. Butts, M.D., testified for the State concerning his findings and the results of an autopsy performed on Ms. McCrimmon. He detailed injuries to Ms. McCrimmon, including blunt force trauma to her face, legs, and genital area. In Dr. Butts's opinion, the autopsy findings were consistent with the perpetrator beating, raping, and strangling Ms. McCrimmon until she died. Dr. Butts also testified he was unable to determine an exact time of death.

Special Agent Christopher Parker of the North Carolina State Bureau of Investigation conducted deoxyribonucleic acid (DNA) testing, comparing samples from swabs from the condoms, bloodstains, and cigarette butt discovered at the crime scene with known DNA samples from Ms. McCrimmon and defendant. The DNA profile found in one of the condoms was consistent with only the victim's DNA profile, while the other condom contained profiles consistent with both defendant and the victim. On the cigarette butt, Special Agent Parker found the DNA profile to be consistent with defendant's DNA profile, with the profile being 463 thousand trillion times to 25.9 million trillion times more likely to be observed from defendant than another unrelated African-American, Lumbee Indian, Caucasian, or Hispanic member of the North Carolina population.

Based upon the evidence presented at trial, the trial court allowed defendant's motion to dismiss portions of one felonious possession of stolen goods indictment which alleged possession of a microwave oven, a television, and an AM-FM cassette compact disc

**STATE v. ELLIOTT**

[360 N.C. 400 (2006)]

player. After the trial court instructed the jury on the appropriate law of the case, the jury deliberated and returned verdicts of guilty of first-degree felony murder based upon a theory of rape, first-degree rape, and first-degree burglary. Defendant was acquitted of all other charges.

During the penalty proceeding, the State presented victim impact testimony from the victim's niece and sister. A mitigation specialist testified that defendant functioned at a low level of intelligence, that his father abandoned him at birth leaving him with no male role model, and that defendant has had problems with drug and alcohol abuse.

After instruction by the trial court, the jury deliberated and found unanimously and beyond a reasonable doubt the existence of two aggravating circumstances: (1) the murder was committed while the defendant was engaged in the commission of first-degree burglary; and (2) the murder was especially heinous, atrocious, or cruel. The jury found five non-statutory mitigating circumstances, including a catchall mitigating circumstance. The jury then unanimously found beyond a reasonable doubt the mitigating circumstances were insufficient to outweigh the aggravating circumstances and that the aggravating circumstances were sufficiently substantial to call for imposition of the death penalty. Accordingly, the jury made a binding recommendation of a sentence of death.

The trial court entered judgment of a sentence of death for the first-degree murder conviction, arrested judgment on the first-degree rape conviction, and sentenced defendant in the presumptive range to a consecutive term of 103 to 133 months for the first-degree burglary conviction.

## JURY SELECTION ISSUES

[1] Defendant argues the trial court erred in failing to excuse a prospective juror who was over the age of sixty-five. Thelma Tennin, a prospective juror in the case, asked during jury selection if she could pose a question to the prosecutor. The prosecutor replied that she could and she asked: "There was a form on the back of the notification that people sixty-five years and older could be exempt. I did not get any response from having sent mine in. Does that have any—." The trial court responded by reading the applicable law to Ms. Tennin and telling her that the trial court's view of the statutes was that she must show a compelling personal hardship in order to

be excused from jury service. After Ms. Tennin responded that she did not have a compelling personal hardship, "other than old age," the trial court determined that it would not excuse her from service. Eventually, defendant used a peremptory challenge to remove Ms. Tennin from the jury pool.

We note defendant did not properly preserve this error for review because defendant did not object at trial. *See* N.C. R. App. P. 10(b)(1); *State v. Haselden*, 357 N.C. 1, 10, 577 S.E.2d 594, 600, *cert. denied*, 540 U.S. 988 (2003). However, as a decision clarifying the law in this regard is in the public interest, we will review defendant's argument despite its procedural bar. *See* N.C. R. App. P. 2.

Defendant's argument relies upon the assumption that a trial court may excuse a juror merely because that juror is over the age of sixty-five. This premise is unfounded under North Carolina law. This Court put it well in *State v. Rogers*:

> By statute, citizens over the age of sixty-five are qualified to serve on juries. N.C.G.S. § 9-3 (2001). However, a prospective juror over that age may, when summoned, request an exemption. N.C.G.S. § 9-6.1 (2001). The judge has the option of allowing or denying the request. *Id.* Once the venire is in the courtroom, any juror, though qualified, nevertheless may ask to be excused. The General Assembly has
>
> > declare[d] the public policy of this State to be that jury service is the solemn obligation of all qualified citizens, and that excuses from the discharge of this responsibility should be granted only for reasons of compelling personal hardship or because requiring service would be contrary to the public welfare, health, or safety.
>
> N.C.G.S. § 9-6(a) (2001). This language gives trial courts considerable latitude to deal with the particular problems that appear with every trial, and we have recognized that the decision to excuse a prospective juror lies in the trial court's discretion. We have stated that a juror may properly be excused on the basis of age. Accordingly, we discern no abuse of discretion in the trial court's decision to grant the jurors' requests to be excused. Nevertheless, in light of the statutory admonition contained in N.C.G.S. § 9-6(a), we remind the trial courts that excusing prospective jurors present in the courtroom who are over the age

of sixty-five must reflect a genuine exercise of judicial discretion. Defendant correctly points out that such jurors often bring to the jury pool both a wealth of experience and a willingness to serve.

355 N.C. 420, 447-48, 562 S.E.2d 859, 876-77 (2002) (citations omitted) (brackets in original).

It is clear from the text of N.C.G.S. §§ 9-3, N.C.G.S. § 9-6(a), and N.C.G.S. § 9-6.1[1] that whether a juror should be excused from jury service is a decision which rests in the sound discretion of the trial court. On many occasions, a prospective juror's age may be a compelling personal hardship. However, this is not always the case. "The adverse effects of growing old do not strike all equally or at the same time, and it is only sensible to allow trial judges to consider the individual when a prospective juror seeks to be excused because of his or her age." *Rogers*, 355 N.C. at 449, 562 S.E.2d at 877-78. That the trial court exercised its discretion in the case *sub judice* is apparent, not only from its discussion with Ms. Tennin, but also with other jurors over the age of sixty-five whom it excused from service due to compelling personal hardships.

The trial court asked Ms. Tennin: "Well, because of your age, are you able to sit and listen to the evidence as presented by the attorneys?" She answered she was able to do so and that she could listen to the attorney's arguments and the trial court's instructions. Defendant contends in his brief the trial court treated Ms. Tennin in a disparate manner because it dismissed other jurors solely on the basis of their age. Specifically, defendant asserts the trial court "merely determined each [prospective juror at issue] was over sixty-five and wished to be exempt from jury service." The record does not comport with defendant's assertion. Of the four prospective jurors defendant mentions in his brief, each one had some other hardship besides his or her age considered by the trial court. One prospective juror was seventy-nine years old and afflicted with Alzheimer's. Another was eighty-one years old and had severe arthritis and kidney problems. A third was eighty years old and had a hearing problem. The fourth prospective juror had a "slipped disk and also severe deterioration of the lumbar area . . . [and] chronic cystic fibrosis" which distorted the prospective juror's vision. The record bears out that the trial court did not merely determine the age of the prospective jurors

---

1. Since the time of trial, N.C.G.S. § 9-6.1 has been amended to allow prospective jurors ages "72 years or older" to make a request to be excused, deferred, or exempted in writing without appearing in the courtroom.

at issue as defendant contends, but rather the trial court exercised discretion as required by the applicable General Statutes.

Defendant contends the trial court's failure to dismiss Ms. Tennin amounts to structural error or plain error. Because we find the trial court's actions were not erroneous as they did not constitute an abuse of discretion, it is unnecessary to address these contentions. Defendant's assignment of error is overruled.

[2] Defendant assigns as error the trial court's refusal to allow defendant to question prospective jurors as to whether they had any preconceived notions about taxpayer cost for imprisoning a defendant for life without parole versus a capital sentence. This Court has previously stated that "[i]n this jurisdiction counsel's exercise of the right to inquire into the fitness of jurors is subject to the trial judge's close supervision. The regulation of the manner and the extent of the inquiry rests largely in the trial judge's discretion." *State v. Bryant*, 282 N.C. 92, 96, 191 S.E.2d 745, 748 (1972), *cert. denied sub nom. White v. North Carolina*, 410 U.S. 958 (1973), *and cert. denied sub nom. Holloman v. North Carolina*, 410 U.S. 987 (1973). Therefore, we must determine whether the trial court's denial of defendant's request amounts to a clear abuse of discretion which prejudiced defendant. *State v. Young*, 287 N.C. 377, 387, 214 S.E.2d 763, 771 (1975) ("A defendant seeking to establish on appeal that the exercise of such discretion constitutes reversible error must show harmful prejudice as well as clear abuse of discretion."), *judgment vacated in part on other grounds*, 428 U.S. 903 (1976); *accord, State v. Avery*, 315 N.C. 1, 20, 337 S.E.2d 786, 796-97 (1985).

After discovering one juror's views on the cost of life imprisonment versus the cost of capital punishment, defendant requested permission to ask prospective jurors: "Do you have any preconceived notions about the cost of executing someone compared to the cost of keeping [him] in prison for the rest of [his] ·life?" The trial court denied defendant's request. While it is true the question posited by defendant may have been relevant as to whether prospective jurors could apply the law as given by the trial court in light of their own personal beliefs on the cost of life imprisonment versus capital punishment, the issue is not whether such a question was relevant, but whether the trial court abused its discretion in not allowing defendant to ask the proposed question.

Undoubtedly, nearly every juror questioned had at least some preconceived ideas about the death penalty. In the age of instant

information and mass media, it is nearly impossible for prospective jurors to shield themselves from every discussion about capital punishment. However, a juror is not automatically excluded from jury service merely because that juror may have an opinion about the propriety of the death penalty. Instead, a trial court's discretion is properly used to ensure that a juror can put aside any personal beliefs in the propriety of capital punishment and recommend a sentence in accordance with the trial court's instructions and the law. *See Wainwright v. Witt*, 469 U.S. 412, 419-21 (1985); *State v. Kimmerlin*, 356 N.C. 446, 468-70, 573 S.E.2d 870, 886-87 (2002). Defendant was allowed to ask whether each juror would automatically impose the death penalty or whether the juror would apply the law as given by the trial court. By allowing this question, the trial court permitted defendant to probe into the death penalty views of the prospective jurors and to determine if they were inclined to automatically vote for imposition of death without applying the law. Because we cannot say the trial court clearly abused its discretion in denying defendant's request, we overrule defendant's assignment of error.

**[3]** Defendant next argues the trial court committed reversible error by restoring peremptory challenges to both defendant and the State after dismissing an entire group of prospective jurors for misconduct. Contrary to the trial court's instructions, during jury selection prospective jurors discussed how to be excused from the jury and the probable length of the trial due to defendant's prior convictions. When this information came to the attention of the trial court, it granted defendant's motion to strike the entire venire present at the time of the misconduct. Because defendant and the State had used peremptory challenges to dismiss some of these prospective jurors from the venire before the discovery of the misconduct, defendant sought restoration of the peremptory challenges used against the disqualified prospective jurors. After a renewal of this motion, the trial court granted defendant's request and restored one challenge to defendant and two challenges to the State.

A trial court generally has "no authority to grant additional peremptory challenges." *State v. Smith*, 359 N.C. 199, 207-08, 607 S.E.2d 607, 615, *cert. denied*, —— U.S. ——, 126 S. Ct. 109, 163 L. Ed. 2d 121 (2005). We decline to reach the issue of whether the trial court's actions were error because defendant has invited any error which may be present from the trial court's "restoration" of the wasted peremptory challenges. "A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from

his own conduct." N.C.G.S. § 15A-1443(c) (2005). *See also State v. Payne*, 280 N.C. 170, 171, 185 S.E.2d 101, 102 (1971) ("Ordinarily one who causes (or we think joins in causing) the court to commit error is not in a position to repudiate his action and assign it as ground for a new trial . . . . Invited error is not ground for a new trial."). Defendant's assignment of error is overruled.

[4] Defendant assigns as error the denial of his motion to seat two jurors opposed to the imposition of the death penalty under any circumstances during the guilt-innocence proceeding and substitute two alternate jurors who were "death qualified" during the penalty proceeding. We have previously considered whether such a request was properly denied and held:

> Selecting a jury composed both of those opposed and unopposed to capital punishment for the purpose of determining guilt and then, at the sentencing phase, replacing those opposed by alternates who are unopposed to the death penalty contravenes G.S. 15A-2000(a)(2), which contemplates that the same jury which determines guilt will recommend the sentence. General Statute 15A-2000(a)(2) permits alternate jurors to serve during the sentencing phase in extraordinary circumstances involving the death, incapacitation or disqualification of an empaneled juror, but does not provide for the exchange of jurors for the sentencing phase based upon their convictions concerning the death penalty.

*State v. Bondurant*, 309 N.C. 674, 682, 309 S.E.2d 170, 176 (1983). Additionally, this Court and the Supreme Court of the United States have held that death qualification of a jury is not unconstitutional. *See Lockhart v. McCree*, 476 U.S. 162, 173, 184 (1986); *State v. Avery*, 299 N.C. 126, 136-38, 261 S.E.2d 803, 809-10 (1980). Because we decline to depart from our prior precedent in *Bondurant* and *Avery*, we overrule defendant's assignment of error.

## GUILT-INNOCENCE PROCEEDING ISSUES

[5] Defendant argues the trial court erred in denying his motion to dismiss the burglary charge because the evidence was insufficient to prove the breaking and entering of Ms. McCrimmon's home occurred at nighttime. As an initial matter, the issue of defendant's burglary conviction is not properly before this Court. While convictions that result in a judgment of death are automatically appealable to this Court, all other convictions are properly appealed to the Court of

Appeals. *See* N.C.G.S. § 7A-27 (2005); N.C. R. App. P. 4(d). Neither party has filed a motion requesting to bypass the Court of Appeals as to this non-capital conviction. However, because this issue also relates to one of defendant's arguments regarding an aggravating circumstance, we will, of our own initiative, consider defendant's assignments of error concerning his burglary conviction. *See* N.C. R. App. P. 2.

**[6]** In evaluating the sufficiency of the evidence, we must determine if there was substantial evidence of each essential element of the crime charged. *See State v. Smith*, 307 N.C. 516, 518, 299 S.E.2d 431, 434 (1983). "To warrant a conviction of burglary in either the first or second degree, the State must show *inter alia* that the crime charged occurred during the nighttime." *Id.* "In considering a motion to dismiss, the evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *State v. Lowery*, 309 N.C. 763, 766, 309 S.E.2d 232, 236 (1983). Defendant argues that there was insufficient evidence the breaking and entering occurred during the nighttime, and, therefore, the evidence did not support a conviction of burglary. Defendant asserts the evidence only amounts to mere speculation or conjecture and is not substantial. For instance, citing *State v. Forney*, defendant claims the fact Ms. McCrimmon's body was found in nightclothes is of "no moment." 310 N.C. 126, 310 S.E.2d 20 (1984) (finding insufficient evidence to prove the breaking and entering occurred at nighttime even though victim was found in pajamas and barefoot). Although defendant claims the victim was found in her nightclothes, the record is clear that Ms. McCrimmon's body was found completely nude with her nightclothes in the floor beside her bed. Regardless, while evidence of the victim's being in or near her nightclothes at the time of the murder is not dispositive of whether the breaking and entering occurred at night, such evidence is relevant and can be considered with the other evidence which tends to show the crime occurred during the nighttime. *See State v. Ledford*, 315 N.C. 599, 607-10, 340 S.E.2d 309, 314-16 (1986).

The evidence presented at trial regarding the time of the crime is as follows: (1) Ms. McCrimmon's nude body was found near her nightclothes; (2) the blood spatter indicated much, if not all, of the rape and beating occurred while Ms. McCrimmon was on the bed; (3) the feces on the electric blanket indicated Ms. McCrimmon was strangled while on her bed; (4) Ms. McCrimmon's electric blanket was turned on, suggesting she was using it at the time of the murder; and (5) two

witnesses testified defendant left their presence at night and returned later that night with possessions matching the description of items taken from Ms. McCrimmon's dwelling.

Because all this evidence, taken in the light most favorable to the State, is substantial evidence that defendant committed the breaking and entering of Ms. McCrimmon's dwelling house at nighttime, we overrule defendant's assignment of error.

[7] Defendant contends the trial court denied defendant a fair and impartial trial by consistently prohibiting the jury from asking questions of witnesses instead of exercising discretion as to particular inquiries. In making this argument, defendant points to three interactions which occurred during trial. The first interaction occurred when a juror attempted to verbally ask a witness a question, and the trial court responded by informing the juror: "Write down your question . . . . You cannot ask questions of the witness. You can ask the Court for questions." The second interaction was when the trial court asked a juror if she was writing out a question for the court. She answered that she was not, and the trial court replied, "very good." The third interaction was when the trial court stated, outside the presence of the jury, in response to concerns raised by defense counsel: "I will state as I did for the record when I admonished Juror Number Five . . . that she is not to ask the witness or the lawyers any questions as she attempted and did direct [a witness] to display an item in a certain way." These interactions, when taken in the context of the entire trial, do not show that the trial court refused to allow the jury to ask any questions. Instead, the context of the entire record shows numerous questions were propounded by the jurors in writing and that each request was given due consideration by the trial court.

"[T]he propriety of juror questioning of witnesses is within the sound discretion of the trial court." *State v. Howard*, 320 N.C. 718, 725, 360 S.E.2d 790, 794 (1987). While it may be permissible in the discretion of the trial court to allow jurors to orally ask witnesses questions, "the better practice is for the juror to submit written questions to the trial judge who should have a bench conference with the attorneys, hearing any objections they might have." *Id.* at 726, 360 S.E.2d at 795. At numerous times throughout this trial, jurors were instructed to put any questions they had in writing and give them to the trial court. Each time a juror wrote a question or a comment to the trial court, the attorneys were informed of the content of the note and appropriate action was taken.

For instance, after the first interaction which defendant contends was improper, the trial court informed counsel for defendant and the State that the juror had written a question asking: "What are the numbers and circle markings on the jacket?" Immediately after this bench conference, the State posed the following question to the witness: "[T]here appear to be some markings on or about [the jacket]. Do you know what those items are or what those markings indicate?" Therefore, the question the juror tried to ask orally was instead reduced to writing and then asked by the State after the bench conference. The record reveals another illustrative incident in which the trial court asked a juror if he had "a question you want to write out?" The juror responded that he did, and the trial court replied, "Go right ahead." When the interactions between the trial court and the jurors are viewed within context, the record clearly demonstrates the jurors' understanding they were permitted to ask questions of the witnesses by submitting those questions in writing to the trial court. The trial court employed the "better practice" as articulated by this Court in *Howard*, and was within its discretion to do so. Therefore, defendant's assignment of error is overruled.

[8] Defendant contends the trial court erred in denying defendant's motion to strike the testimony of Michelle McGarrah after defendant discovered McGarrah was unable to make an in-court identification of defendant and McGarrah had notified the State she was unable to do so. McGarrah testified she saw a man move Ms. McCrimmon's truck in front of the Housing Authority buildings where she was employed on 9 February 2001. She testified it was a black male, between five feet five inches and five feet nine inches tall. She also testified that on 9 February 2001 she identified defendant from a police photographic lineup. After direct examination of McGarrah, defendant requested a recess to prepare a cross-examination of McGarrah, but after the recess declined to cross-examine her.

After the close of the prosecution's evidence, defendant moved to dismiss the charges of larceny and felonious possession of the victim's truck, arguing the evidence was insufficient to submit the issue to the jury. During the argument surrounding the motion to dismiss, the trial court asked the State: "Is there some reason why you didn't ask [McGarrah] if she saw the person in the courtroom—if she ever saw the person in the courtroom get in the truck or get out of the truck?" The prosecutor replied: "Yes, Your Honor. I spoke with Ms. McGarrah very briefly before she was put on the stand and she advised me that she would not be able to make that in-court identifi-

**STATE v. ELLIOTT**

*[360 N.C. 400 (2006)]*

cation." Defendant then moved to strike McGarrah's testimony because, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the State failed to disclose to defendant that McGarrah could not make an in-court identification of defendant.

After voir dire examination of McGarrah, the trial court asked defendant what should be done if it denied his motion to strike her testimony. Defendant's counsel replied: "I want her to get up on the [witness] stand and tell the jury what she just told the Court, that she informed [the State] she couldn't identify the defendant, and they put her on anyway." The State then made a motion to reopen its case and call McGarrah to testify again. The trial court granted the State's motion, and on cross-examination McGarrah testified she was unable to make an in-court identification and had informed the State she was unable to do so.

As a constitutional matter, the State has "no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor." *United States v. Agurs*, 427 U.S. 97, 106 (1976). A prosecutor does have a duty, however, to provide a defendant with evidence favorable to him or her that is material as to guilt or punishment. *See Brady*, 373 U.S. at 87. To establish a *Brady* violation, defendant must show the evidence was favorable, material, and would have affected the outcome of the trial. *See State v. Alston*, 307 N.C. 321, 337, 298 S.E.2d 631, 642-43 (1983). Even if the information must be disclosed, "a *Brady* violation may not constitute error if the favorable evidence is provided in time for the defendant to make effective use of it." *State v. Berry*, 356 N.C. 490, 517, 573 S.E.2d 132, 149 (2002). In this case, when defendant discovered the evidence he had a sufficient amount of time to use it to his benefit.

When the trial court reopened the State's evidence, defendant was allowed to cross-examine McGarrah, eliciting that she was unable to make an in-court identification of defendant. Additionally, during closing argument, defendant made good use of this information and the prosecution's failure to provide it to defendant. Defendant argued that, in light of this non-disclosure, there might have been other evidence which was contrary to the State's theory that was not presented at trial. McGarrah's testimony concerning the truck, while relevant to all the charges, was most relevant to the charges of larceny and felonious possession of the truck. The jury returned verdicts of not guilty as to those charges. Because defendant was able to utilize the information during trial to his advantage, and because it is clear from the jury's verdicts defendant was not

adversely affected by the initial nondisclosure, we find no *Brady* violation. While it certainly would have been better practice for the State to disclose this information as soon as the information became known to it, we cannot say this belated disclosure amounts to reversible error. *See generally, State v. Smith*, 359 N.C. at 227, 607 S.E.2d at 627 (encouraging "North Carolina prosecutors to heed the paramount responsibilities which accompany their authority") (Brady, J., concurring). Accordingly, we overrule defendant's assignments of error.

## CAPITAL SENTENCING PROCEEDING ISSUES

[9] Defendant argues there was insufficient evidence to submit to the jury the aggravating circumstance that he committed the murder during the course of a first-degree burglary because there was insufficient evidence to show the breaking and entering occurred at nighttime. All evidence presented during the guilt-innocence proceeding of defendant's trial was competent evidence for the jury to consider in making its sentencing determination. *See* N.C.G.S. § 15A-2000(a)(3) (2005). Because we have already determined there was sufficient evidence for the jury to return a verdict of guilty of first-degree burglary and the evidence tends to show Ms. McCrimmon was murdered contemporaneously with the burglary, there was sufficient evidence to submit this aggravating circumstance to the jury. We therefore overrule defendant's assignment of error.

[10] Defendant contends the trial court committed plain error by instructing the jury to answer Issue Three of the Issues and Recommendation as to Punishment Form in the affirmative even if the jury found the weight of the five mitigating circumstances equaled the weight of the two aggravating circumstances. Specifically, the trial court instructed the jury as to Issue Three: "If you unanimously find beyond a reasonable doubt that the mitigating circumstances found are insufficient to outweigh the aggravating circumstance or circumstances found, you would answer [I]ssue Three yes." We have recently considered at length whether such an instruction amounts to plain error and have held that it does not. *See State v. Duke*, 360 N.C. 110, 138-40, 623 S.E.2d 11, 29-31 (2005). We decline to overrule our recent jurisprudence on this matter and, therefore, overrule defendant's assignment of error.

[11] Defendant argues the trial court erred in instructing the jury concerning the especially heinous, atrocious, or cruel aggravating circumstance because the trial court denied defendant's request to

have the modifier "especially" repeated in the instruction before both "atrocious" and "cruel." Defendant contends the trial court's instruction, which followed the pattern jury instructions, was unconstitutionally vague and overbroad. We have held numerous times the pattern jury instruction on the especially heinous, atrocious, or cruel aggravating circumstance found in 1 N.C.P.I.—Crim. 150.10, is not unconstitutionally vague or overbroad. *See, e.g., Duke,* 360 N.C. at 136-37, 623 S.E.2d 28-29; *State v. Syriani,* 333 N.C. 350, 388-92, 428 S.E.2d 118, 139-42, *cert. denied,* 510 U.S. 948 (1993). Defendant's arguments have not persuaded us to depart from our previous holdings on this matter. We therefore overrule defendant's assignments of error.

## *DEFENDANT'S MOTION FOR APPROPRIATE RELIEF*

[12] Defendant contends the trial court erred in denying his motion for appropriate relief, which alleged that defendant's statutory and constitutional rights had been violated when two jurors met and prayed outside of the jury room during a recess from deliberations. Defendant's motion for appropriate relief alleged juror misconduct prior to the return of the sentencing recommendation while seeking to impeach the sentencing recommendation. We conclude evidentiary support submitted by defendant was insufficient to "show the existence of the asserted ground for relief" or to show the required prejudice to defendant, we hold the trial court did not err in denying defendant's motion. N.C.G.S. § 15A-1420(c)(6) (2005).

In ruling on defendant's motion for appropriate relief, the trial court found, *inter alia,* that *The Pilot* newspaper had reported that one of the jurors in the case, Andrea Seagraves, indicated she and a male juror prayed together in the lobby during an afternoon recess. Both jurors were, at the time of the prayer, undecided on whether to recommend a sentence of death. After the two returned to the deliberation room with all the other jurors, they both indicated they favored a death sentence. Neither the State nor defendant argues these findings of fact were improperly made or not supported by competent evidence. Therefore, we consider them binding upon appeal. *See State v. Freeman,* 313 N.C. 539, 544, 330 S.E.2d 465, 470 (1985) (stating that when a trial court's findings of fact are supported by competent evidence, they are binding on the appellate courts).

Article I, Section 24 of the North Carolina Constitution guarantees a criminal defendant a trial by jury and requires a unanimous

verdict for a conviction. Moreover, this Court has said on numerous occasions that the jury must be composed of twelve persons. *See, e.g., State v. Bunning*, 346 N.C. 253, 255-56, 485 S.E.2d 290, 291-92 (1997); *State v. Hudson*, 280 N.C. 74, 79, 185 S.E.2d 189, 192 (1971). However, the documentary evidence defendant submitted to support his motion for appropriate relief was insufficient to show, by any standard, that juror misconduct occurred in the form of private deliberations outside the presence of the other jurors.

While defendant's brief characterizes the prayer between the two jurors as "deliberations" and "discussions about the case outside the presence of their ten fellow jurors," there is nothing in the record that indicates a discussion or deliberation of any kind occurred. We find no controlling case prohibiting jurors from engaging in prayer outside the presence of the other jurors or any authority which would prohibit juror contact with one another outside of the deliberation room. The only relevant requirement is that jurors not discuss the case except in the jury room and that such discussions occur only after the commencement of deliberations. *See* N.C.G.S. § 15A-1236(a)(1) (2005). Defendant has not presented any documentary evidence required by N.C.G.S. § 15A-1420(b) which suggests the jurors talked *about the case* during the recess. Due to this failure to submit sufficient documentary evidence supporting his allegations regarding the facts and significance of the prayer, defendant has failed to "show the existence of the asserted ground for relief." N.C.G.S. § 15A-1420(c)(6).

Defendant asserts this case cannot be distinguished from *State v. Bunning*. In *Bunning*, because an alternate juror was seated after the jury's sentencing deliberations had already commenced, thirteen jurors participated in reaching a verdict as to sentencing. 346 N.C. at 256, 485 S.E.2d at 292. In this case only twelve jurors deliberated concerning defendant's sentence. Defendant similarly cites *State v. Bindyke*, 288 N.C. 608, 623, 220 S.E.2d 521, 531 (1975) (improper for alternate juror to be present during the jury's deliberations), and *State v. Poindexter*, 353 N.C. 440, 440-43, 545 S.E.2d 414, 414-16 (2001) (dismissal of a juror after the verdict was rendered for misconduct which occurred before a guilty verdict was rendered violated right to trial by jury comprised of twelve *qualified* jurors). Neither case is especially helpful in resolving this matter, as neither dealt with purported extraneous discussion by members of the jury. Therefore, none of the cases cited by defendant lend support to his argument that the praying jurors somehow constituted a jury of some

number other than twelve in violation of the North Carolina Constitution or prior case law.

Additionally, even if the individual jurors' prayers constituted misconduct, there simply was insufficient documentary evidence to show the required prejudice. The documentary evidence indicates only that after the praying jurors returned to the deliberation room they favored a death sentence. Although defendant could have sought affidavits from potential witnesses to support his claim of juror misconduct raised in the motion for appropriate relief, defendant presented nothing save a few newspaper accounts which shed very little light on the alleged discussions between the two jurors concerning the case, and certainly failed to shed light on any prejudice to defendant which arose from discussions, if any, surrounding the prayer. Accordingly, we find the trial court did not err in denying defendant's inadequately supported motion for appropriate relief. Defendant's assignment of error is overruled.

[13] Defendant assigns error to the trial court's denial of his request for an evidentiary hearing on his motion for appropriate relief. When determining whether an evidentiary hearing was appropriate in this case, we note "[a]n evidentiary hearing is not required when the motion is made in the trial court pursuant to G.S. 15A-1414, but the court may hold an evidentiary hearing if it is appropriate to resolve questions of fact." N.C.G.S. § 15A-1420(c)(2) (2005). Merely because a defendant asserts constitutional violations does not entitle that defendant to an evidentiary hearing on the motion for appropriate relief. *See State v. McHone*, 348 N.C. 254, 256-58, 499 S.E.2d 761, 762-63 (1998). "Further, if the trial court can determine from the motion and any supporting or opposing information presented that the motion is without merit, it *may* deny the motion without any hearing either on questions of fact or questions of law, including constitutional questions." *Id.* at 257, 499 S.E.2d at 763 (citing N.C.G.S. § 15A-1420(c)(1)). Therefore, if a defendant files a motion for appropriate relief under N.C.G.S. § 15A-1414, the decision of whether an evidentiary hearing is held is within the sound discretion of the trial court. Defendant's motion for appropriate relief was made in the trial court pursuant to N.C.G.S. § 15A-1414 so, therefore, we review the trial court's order denying an evidentiary hearing for abuse of discretion. "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

We determine the trial court's decision was not an abuse of discretion. As determined above, defendant failed to make an adequate threshold showing of juror misconduct. As to defendant's efforts to impeach the jury's sentencing recommendation, defendant would have been unable to present any evidence which would have strengthened the claims made in the motion for appropriate relief. While a juror is competent to testify on certain matters, *see* N.C.G.S. § 8C-1, Rule 606(b) (2005), a juror may not testify "to show the effect of any statement, conduct, event, or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined." *Id.* § 15A-1240(a) (2005); *see also id.* § 8C-1, Rule 606(b). Additionally, a juror can only testify to impeach the verdict when the testimony concerns: "(1) Matters not in evidence which came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witnesses against him; or (2) Bribery, intimidation, or attempted bribery or intimidation of a juror." *Id.* § 15A-1240(c) (2005); *see also id.* § 8C-1, Rule 606(b).

During argument for an evidentiary hearing, defendant stated that he intended to call three jurors and then call newspaper reporters on rebuttal if necessary. Under N.C.G.S. §§ 15A-1240(c) and 8C-1, Rule 606(b), those jurors defendant intended to call could have only testified whether extraneous information came to their attention, or whether someone did or attempted to bribe or intimidate them. There were no allegations of bribery, intimidation, or attempted bribery or intimidation. Similarly, nothing in defendant's motion for appropriate relief indicated that the jurors considered extraneous information, which is information about the defendant or the case being tried that was not introduced into evidence. *See State v. Rosier*, 322 N.C. 826, 831-32, 370 S.E.2d 359, 362-63 (1988). Therefore, even if the trial court had granted defendant's request for an evidentiary hearing, none of defendant's proposed juror witnesses would have been allowed to testify concerning the issues raised in the motion for appropriate relief which attempted to impeach the sentencing recommendation. Therefore, we cannot say it was an abuse of the trial court's discretion to deny defendant's request for an evidentiary hearing. This assignment of error is overruled.

**[14]** Defendant argues the trial court erred in denying his motions to assign consideration of his post-trial motions, specifically his motion for appropriate relief, to a Superior Court judge who was not subject to popular election, but who was appointed by the governor or some

other entity. Defendant argued at trial the federal constitution required granting such a motion, but on appeal asserts that both the United States and North Carolina Constitutions required his motion be assigned to an appointed judge. As defendant did not raise the state constitutional grounds at the trial court, we decline to consider those issues. *See* N.C. R. App. P. 10(b)(1); *State v. Benson*, 323 N.C. 318, 321-22, 372 S.E.2d 517, 519 (1988) ("Defendant may not swap horses after trial in order to obtain a thoroughbred upon appeal."). Therefore, we dismiss these portions of defendant's assignments of error fifty-three and fifty-four insofar as they assert error based upon the North Carolina Constitution.

[15] As to defendant's federal constitutional claims, they are without merit. The Supreme Court of the United States is the final authority on federal constitutional questions. *See Cooper v. Aaron*, 358 U.S. 1, 18 (1958); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). In *Republican Party of Minnesota v. White*, the Supreme Court of the United States rejected the view that the due process clause prohibits an elected judge from ruling on a case that would increase or decrease his chances for reelection. 536 U.S. 765, 782-83 (2002). If that view were true, that Court noted, "then—quite simply—the practice of electing judges is itself a violation of due process." *Id.* However, this position is not "reflected in the Due Process Clause of the Fourteenth Amendment, which has coexisted with the election of judges ever since it was adopted." *Id.* at 783. We decline to adopt defendant's argument, which is in conflict with a decision of the Supreme Court of the United States, and, therefore, overrule defendant's assignments of error.

## PRESERVATION ISSUES

Defendant asserts multiple assignments of error concerning the indictment charging him with first-degree murder because it failed to allege all of the elements of first-degree murder and the statutory aggravating circumstances which the State intended to submit for capital sentencing. This Court has considered whether short-form indictments are statutorily and constitutionally permissible in the past and rejected defendant's argument. *See State v. Mitchell*, 353 N.C. 309, 328-29, 543 S.E.2d 830, 842, *cert. denied*, 534 U.S. 1000 (2001); *State v. Wallace*, 351 N.C. 481, 504-08, 528 S.E.2d 326, 341-43, *cert. denied*, 531 U.S. 1018 (2000). Likewise, this Court has previously considered and rejected the argument that aggravating circumstances must be alleged in the indictment and has rejected that argument. *See State v. Hunt*, 357 N.C. 257, 268-78, 582 S.E.2d

593, 600-06, *cert. denied*, 539 U.S. 985 (2003). We decline to depart from our prior precedent.

The indictment charging defendant with first-degree murder reads: "The jurors for the State upon their oath present that on or about the 28th day of January, 2001, and in the county named above the defendant named above unlawfully, willfully and feloniously and of malice aforethought did kill and murder Alice Mae McLeod McCrimmon. Offense in violation of G.S. 14-17." As this indictment met the requirements of N.C.G.S. § 15-144, we overrule defendant's assignments of error.

Defendant argues the trial court erred in instructing the jury it must agree unanimously to answer "no" on Issues One, Three, and Four of the Issues and Recommendation as to Punishment Form. We have previously decided this matter and rejected this argument. *See* *State v. McCarver*, 341 N.C. 364, 390, 462 S.E.2d 25, 39 (1995), *cert. denied*, 517 U.S. 1110 (1996). We decline to overrule our precedent and, therefore, overrule defendant's assignments of error.

Defendant assigns as error the trial court's instruction that the jury had a duty to return a recommendation of death if it answered Issue Four on the Issues and Recommendation as to Punishment Form in the affirmative. We have previously decided this issue contrary to defendant's position and decline defendant's request to depart from our past precedent. *See* *State v. Skipper*, 337 N.C. 1, 57, 446 S.E.2d 252, 283-84 (1994), *cert. denied*, 513 U.S. 1134 (1995). Defendant's assignment of error is overruled.

Defendant argues the trial court erred in instructing the jury on the burden of proof required to find a mitigating circumstance by using the word "satisfied." Defendant claims the term "satisfy" is "too vague to be understood by jurors." We have considered this argument in the past and rejected it. *See* *State v. Payne*, 337 N.C. 505, 531-33, 448 S.E.2d 93, 108-09 (1994), *cert. denied*, 514 U.S. 1038 (1995). In doing so we noted " 'satisfies' denotes a burden of proof consistent with a preponderance of the evidence." *Id.* at 533, 448 S.E.2d at 109. We overrule defendant's assignment of error.

Defendant argues the trial court erred in instructing the jury it could not consider nonstatutory mitigating circumstances it found to have no mitigating value. Defendant asserts in his brief that the trial court submitted nine nonstatutory mitigating circumstances to the jury and that the jury rejected all but one. However, a review of the record in this case, specifically the Issues and Recommendation as to

Punishment Form, indicates submission of five written nonstatutory mitigators to the jury and that one or more jurors found all five to exist. As one or more jurors found all the submitted circumstances to exist and have mitigating value, this assignment of error is meritless. Additionally, this Court has previously decided this issue contrary to defendant's position, and we find no reason to overrule our precedent. *See State v. Tirado,* 358 N.C. 551, 601, 599 S.E.2d 515, 548 (2004), *cert. denied sub nom., Queen v. North Carolina,* 544 U.S. 909 (2005). Therefore, defendant's assignment of error is overruled.

Defendant assigns as error the trial court's instruction on aggravation, claiming it is unconstitutionally broad. We have previously considered this issue and decline to overrule our past precedent. *See State v. Bell,* 359 N.C. 1, 46, 603 S.E.2d 93, 123 (2004), *cert. denied,* —— U.S. ——, 125 S. Ct. 2299, 161 L. Ed. 2d 1094 (2005). Defendant's assignment of error is overruled.

Defendant contends the jury instructions for Issues Three and Four of the penalty proceeding impermissibly used the word "may," thereby permitting, but not requiring, each juror to weigh any mitigating circumstances he or she may have found by a preponderance of the evidence under Issue Two. This Court considered this argument previously and found it to lack merit. *See State v. Lee,* 335 N.C. 244, 286-87, 439 S.E.2d 547, 569-70, *cert. denied,* 513 U.S. 891 (1994). Defendant has presented no persuasive argument, nor do we find any compelling reason, for overruling our prior holdings on this issue. Defendant's assignment of error is overruled.

Defendant contends the trial court erred in instructing the jury that, in deciding Issues Three and Four of the Issues and Recommendation as to Punishment Form, each juror could only consider those mitigating circumstances that particular juror found in Issue Two. The trial court instructed the jury as to this issue: "[E]ach juror may consider any mitigating circumstance or circumstances that juror determined to exist by a preponderance of the evidence." We have previously decided this issue contrary to defendant's position and decline to overrule our past precedent. *See State v. Skipper,* 337 N.C. at 49-51, 446 S.E.2d at 279-80. This assignment of error is overruled.

Defendant makes a broad assertion that the North Carolina capital punishment statute is unconstitutional because it is vague, overbroad, arbitrary, discriminatory, and inherently cruel and unusual. The constitutionality of North Carolina's capital punishment statute

has been affirmed numerous times by this Court, and we find no reason to overrule our precedent. *See, e.g., Duke,* 360 N.C. at 142, 623 S.E.2d at 32; *State v. Williams,* 350 N.C. 1, 35, 510 S.E.2d 626, 648 (1999), *cert. denied,* 528 U.S. 880 (1999). Defendant's assignments of error are overruled.

## *PROPORTIONALITY*

[16] Having concluded defendant's trial and capital sentencing proceeding were free from prejudicial error, we must now determine: (1) whether the record supports the aggravating circumstances found by the jury and upon which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *See* N.C.G.S. § 15A-2000(d)(2) (2005).

The jury found two aggravating circumstances: (1) the murder was committed while defendant was engaged in the commission of first-degree burglary, N.C.G.S. § 15A-2000(e)(5); and (2) the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). As discussed above, there was sufficient evidence to submit the (e)(5) aggravating circumstance to the jury. Likewise, there was sufficient evidence to submit to the jury that the murder was especially heinous, atrocious, or cruel ("HAC"). This Court has characterized three types of murders for which submission of HAC may be proper:

> One type includes killings physically agonizing or otherwise dehumanizing to the victim. A second type includes killings less violent but "conscienceless, pitiless, or unnecessarily torturous to the victim," including those which leave the victim in her "last moments aware of but helpless to prevent impending death." A third type exists where "the killing demonstrates an unusual depravity of mind on the part of the defendant beyond that normally present in first-degree murder."

*State v. Gibbs,* 335 N.C. 1, 61-62, 436 S.E.2d 321, 356 (1993) (citations omitted), *cert. denied,* 512 U.S. 1246 (1994). Here, the murder was of the first and second type.

The evidence showed that defendant raped and murdered Ms. McCrimmon while she was in her own home, in the perceived safety of her own bedroom. The evidence showed she was brutally beaten,

injuring her face and leaving numerous blood spatters in her bed-room. The evidence also shows defendant killed her by strangulation, a method of murder which takes several minutes, leaving Ms. McCrimmon aware of her impending death but helpless to prevent it. While some of this evidence also tended to support submission of the (e)(5) aggravator, such overlapping of evidence "is permissible so long as there is not a complete overlap of evidence." *State v. Call*, 349 N.C. 382, 426, 508 S.E.2d 496, 523 (1998). Therefore, there was sufficient evidence for the submission of both aggravating circum-stances found by the jury.

Likewise, there is nothing in the record that suggests the death sentence was entered under the influence of passion, prejudice, or any other arbitrary factor. Accordingly, we will not disturb the jury's weighing of the aggravating and mitigating circumstances.

> Turning now to our final statutory duty, we recognize that proportionality review is designed to "eliminate the possibil-ity that a person will be sentenced to die by the action of an aberrant jury." In conducting the proportionality review, we must determine whether "the sentence of death is excessive or dispro-portionate to the penalty imposed in similar cases, considering both the crime and the defendant." This determination " 'ulti-mately rest[s] upon the "experienced judgments" of the mem-bers of this Court.' "

*State v. Garcia*, 358 N.C. 382, 426, 597 S.E.2d 724, 754 (2004) (alteration in original) (citations omitted), *cert. denied*, 543 U.S. 1156 (2005).

Defendant argues this Court's method of proportionality review is arbitrary and capricious because, defendant asserts, this Court only compares cases it has found proportionate and disproportionate to the case at bar. However, defendant's argument misrepresents our method of proportionality review. This Court's proportionality review includes not only comparison of this case with cases previously found disproportionate and proportionate as defendant contends, but also consideration of "all cases which are roughly similar in facts to the instant case, although we are not constrained to cite each and every case we have used for comparison." *State v. McNeill*, 360 N.C. 231, 254, 624 S.E.2d 329, 344 (2006). Therefore, we overrule defend-ant's assignment of error.

In our proportionality review, we compare the case at bar to cases in which this Court has found imposition of the death penalty

to be disproportionate. This Court has previously determined capital punishment was disproportionate in eight cases. *State v. Kemmerlin*, 356 N.C. 446, 573 S.E.2d 870; *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517; *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled in part on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170; and *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

In no case in which we have found a death sentence disproportionate has the jury found the two aggravating circumstances found by the jury in the case *sub judice*. In fact, when the jury found the murder was especially heinous, atrocious, or cruel, there have only been two instances in which this Court has found disproportionality. *See State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987) and *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983). In *Stokes*, a seventeen-year old defendant was the only one of four assailants to receive a capital sentence. 319 N.C. at 3-4, 21, 352 S.E.2d at 654-55, 664. In *Bondurant*, the defendant showed an exceptional display of remorse, even directing a driver to the hospital in the hopes of procuring medical treatment for the victim. 309 N.C. at 694, 309 S.E.2d at 182-83.

The case at bar is readily distinguishable from *Stokes* and *Bondurant*. First, defendant was not a minor at the time of the murder, nor was he the only one of multiple codefendants to receive a capital sentence. Instead, defendant was an adult and perpetrated this murder on his own with no encouragement from any cohorts. Second, defendant certainly has not shown any remorse for his actions. He did not attempt to obtain medical assistance for Ms. McCrimmon. Instead, he beat her, raped her, and squeezed his hands around her neck, literally choking the life out of her. All of this occurred at night while the victim was in the sanctity of her own abode.

"Although we 'compare this case with the cases in which we have found the death penalty to be proportionate . . . we will not undertake to discuss or cite all of those cases each time we carry out that duty.' " *State v. Garcia*, 358 N.C. at 429, 597 S.E.2d at 756 (2004) (quoting *State v. McCollum*, 334 N.C. 208, 244, 433 S.E.2d 144, 164 (1993), *cert. denied*, 512 U.S. 1254 (1994)). "[O]nly in the most clear

and extraordinary situations may we properly declare a sentence of death which has been recommended by the jury and ordered by the trial court to be disproportionate." *See State v. Chandler*, 342 N.C. 742, 764, 467 S.E.2d 636, 648, *cert. denied*, 519 U.S. 875 (1996). This case is certainly not an extraordinary situation, as this Court has found that both the (e)(5) and the (e)(9) aggravators standing alone are sufficient to sustain a death sentence. *See State v. Watts*, 357 N.C. 366, 381, 584 S.E.2d 740, 751 (2003), *cert. denied*, 541 U.S. 944 (2004). Therefore, we find the death sentence recommended by the jury in this case proportionate to the crime committed.

Defendant has assigned multiple instances of error for which there is no argument or supporting authority cited in his brief. Therefore, those assignments of error are taken as abandoned and dismissed. *See* N.C. R. App. P. 28(b)(6); *State v. McNeill*, 360 N.C. at 241, 624 S.E.2d at 336. Having dismissed or overruled all of defendant's assignments of error, we find defendant received a fair trial and capital sentencing proceeding free of prejudicial error. We also find defendant's death sentence is proportionate considering the crime and the nature of defendant.

NO ERROR.