STATE OF NORTH CAROLINA v. ROBERT EARL BUNNING

No. 403A92-2

(Filed 6 June 1997)

**1. Jury § 268 (NCI4th)— capital sentencing—alternate juror—substituted after deliberations began—error**

A new sentencing hearing was granted to a first-degree murder defendant where the jury began its deliberations after lunch, continued until evening recess, one of the jurors asked to be excused the next morning because she was a manic-depressive and could not continue, the court replaced this juror with an alternate, and the court instructed the jury to begin its delibera-

tions anew. Article I, Section 24 of the North Carolina Constitution guarantees the right to trial by jury and contemplates no more or less than a jury of twelve, but in this case eleven jurors fully participated in reaching the verdict and two participated partially. It cannot be said what influence the juror who was excused had on the other jurors, and the alternate did not have the benefit of the discussion by the other jurors which occurred before he was put on the jury. Furthermore, the statutes dealing with jurors in criminal cases clearly show that the General Assembly did not intend that an alternate be substituted after the jury has begun its deliberations. Finally, a harmless error analysis cannot be applied because, in order to determine prejudice, any hearing would invade the sanctity, confidentiality, and privacy of the jury process. A trial by a jury which is improperly constituted is so fundamentally flawed that the verdict cannot stand. N.C.G.S. § 15A-1215(a); N.C.G.S. § 15A-1215(b); N.C.G.S. § 15A-2000(a)(2).

**Am Jur 2d, Jury §§ 96 et seq.**

**Constitutionality and construction of statute or court rule relating to alternate or additional jurors or substitution of jurors during trial. 84 ALR2d 1288.**

**Propriety, under state statute or court rule, of substituting state trial juror with alternate after case has been submitted to jury. 88 ALR4th 711.**

2. **Criminal Law § 1340 (NCI4th Rev.)— capital sentencing— defendant not a danger to himself or others in prison—testimony erroneously excluded**

The trial court erred in a first-degree murder resentencing hearing by refusing to allow defendant's expert to testify that defendant would not be a danger in prison to himself or other inmates where the expert's opinion was relevant and would aid the jury in its sentencing recommendation. The issue of prejudice was not reached because a new hearing was granted on another issue.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Cornelius, J., at the 17 July 1995 Criminal Session of Superior Court, Guilford County, upon

STATE v. BUNNING

[346 N.C. 253 (1997)]

a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 15 November 1996.

This is the second time this case has been heard in this Court. In *State v. Bunning*, 338 N.C. 483, 450 S.E.2d 462 (1994), we found no error in the defendant's conviction of first-degree murder, but granted the defendant a new sentencing hearing.

At the second sentencing hearing, the State's evidence showed that the defendant shot and killed Mr. Maurice Rupert Brooks with a single shot from a .25-caliber pistol. The shooting occurred at the conclusion of a card game at the boarding house where both men resided. The jury recommended the death penalty, and this sentence was imposed. The defendant appealed.

*Michael F. Easley, Attorney General, by Barry S. McNeill, Special Deputy Attorney General, for the State.*

*Walter L. Jones for the defendant-appellant.*

WEBB, Justice.

[1] The defendant has brought forward seven assignments of error. We shall discuss two of them. The defendant first assigns error to the court's substitution of an alternate juror for a juror who was excused after the jury had begun its sentencing deliberations. We believe this assignment of error has merit.

The jury began its deliberations shortly after lunch and continued until the evening recess. The next morning, one of the jurors asked to be excused because she said she was a manic-depressive and could not continue with the trial. The court removed this juror and replaced her with an alternate. The court instructed the jury to begin its deliberations anew. The defendant says this was error.

This case brings to the Court the question of whether an alternate juror may be substituted for a juror after deliberations have begun in a sentencing hearing. It is a question of first impression in this jurisdiction, but we have other cases dealing with the subject of alternate jurors which give us guidance. In *State v. Bindyke*, 288 N.C. 608, 220 S.E.2d 521 (1975), we held that it was error for an alternate juror to be in the room with the jury when the members of the jury were deliberating, and such an error cannot be harmless. We said, relying on *State v. Hudson*, 280 N.C. 74, 185 S.E.2d 189 (1971); *State v. Dalton*, 206 N.C. 507, 174 S.E. 422 (1934); *Whitehurst v. Davis*, 3 N.C. 113 (1800) (per curiam); *State v. Alston*, 21 N.C. App. 544, 204 S.E.2d 860

(1974), that Article I, Section 24 of the North Carolina Constitution, which guarantees the right to trial by jury, contemplates no more or less than a jury of twelve persons.

In this case, the jury verdict was reached by more than twelve persons. The juror who was excused participated in the deliberations for half a day. We cannot say what influence she had on the other jurors, but we have to assume she made some contribution to the verdict. The alternate juror did not have the benefit of the discussion by the other jurors which occurred before he was put on the jury. We cannot say he fully participated in reaching a verdict. In this case, eleven jurors fully participated in reaching a verdict, and two jurors participated partially in reaching a verdict. This is not the twelve jurors required to reach a valid verdict in a criminal case.

The statutes dealing with jurors in criminal cases do not deal specifically with the question of substituting an alternate for a juror, but we believe they show that it cannot be done after jury deliberation has begun at the sentencing hearing. N.C.G.S. § 15A-1215(a) provides in part: "Alternate jurors receive the same compensation as other jurors and, unless they become jurors, must be discharged upon the final submission of the case to the jury." N.C.G.S. § 15A-1215(a) (1988). If alternate jurors must be discharged when the case is submitted to the jury, they cannot be substituted for jurors who subsequently become incapacitated.

N.C.G.S. § 15A-1215(b) provides in part that in capital cases: "The alternate jurors shall be retained during the deliberations of the jury on the issue of guilt or innocence under such restrictions, regulations and instructions as the presiding judge shall direct." N.C.G.S. § 15A-1215(b). If the alternate jurors must be released when the penalty phase begins, as the statute implies must be done, they cannot sit as jurors at the penalty phase of the trial.

N.C.G.S. § 15A-2000(a)(2), which deals with capital trials, provides in part:

If prior to the time that the trial jury begins its deliberations on the issue of penalty, any juror dies, becomes incapacitated or disqualified, or is discharged for any reason, an alternate juror shall become a part of the jury and serve in all respects as those selected on the regular trial panel.

N.C.G.S. § 15A-2000(a)(2) (1988) (amended 1994). If an alternate juror can become a part of the jury only before the jury begins its

deliberations on the penalty phase of the trial, the alternate cannot be substituted after the jury begins its deliberations.

These three sections clearly show that the General Assembly did not intend that an alternate can be substituted for a juror after the jury has begun its deliberations.

The State contends these three sections do not proscribe the substitution of an alternate juror during jury deliberations in a capital sentencing hearing. It says that they show that the General Assembly contemplated such a substitution. The State argues first that N.C.G.S. § 15A-1215(a), which provides that alternates "must be discharged" when the case is finally submitted to the jury, does not apply to capital cases. N.C.G.S. § 15A-1215(b) and N.C.G.S. § 15A-2000(a)(2), which deal with capital cases, do not have this provision, and the State contends this makes the legislative intent ambiguous. It says that the ambiguous sections can be construed to authorize the action which was taken in this case. We see no reason why N.C.G.S. § 15A-1215(a) should not apply to capital cases. The section does not so limit itself, and it is not inconsistent with the other two sections, which deal specifically with capital cases. Assuming N.C.G.S. § 15A-1215(a) does not apply to capital cases, the other two sections, for reasons we have set forth in this opinion, show that the legislative intent is that an alternate juror cannot be substituted as was done in this case.

The State contends that if there is error, we should apply a harmless error analysis. This we cannot do. A trial by a jury which is improperly constituted is so fundamentally flawed that the verdict cannot stand. In order to determine whether there was prejudice, any hearing would "invade[] the sanctity, confidentiality, and privacy of the jury process," which we should not do. *State v. Bindyke*, 288 N.C. at 627, 220 S.E.2d at 533.

The defendant is entitled to a new sentencing hearing.

[2] Next, we address the defendant's contention that the trial court erred under *Skipper v. South Carolina*, 476 U.S. 1, 90 L. Ed. 2d 1 (1986), when it refused to allow the defendant's expert to testify that, in her opinion, the defendant would not be a danger in prison to himself or other inmates.

The defendant presented the expert testimony of Dr. Claudia Coleman, a psychologist, regarding the defendant's background and behavior, including his mental and physical health. The trial court

had accepted the witness as an expert and allowed her to testify as to these issues. However, the State objected to the question of whether, in the expert's opinion, the defendant would be a danger to himself or others in the structured environment of a prison. The trial court sustained this objection. The expert stated her opinion, for the record and outside the presence of the jury, that she believed the defendant would not be "an imminent danger to himself or to others."

In *Skipper v. South Carolina*, the United States Supreme Court held that this type of testimony should be presented to the jury. The Court reasoned that the defendant's ability to adjust well to life in prison is "by its nature relevant to the sentencing determination." *Id.* at 7 n.2, 90 L. Ed. 2d at 8 n.2. This Court followed the holding of *Skipper* in *State v. Rouse*, 339 N.C. 59, 451 S.E.2d 543 (1994), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 60 (1995), and found error in the exclusion of an opinion similar to that of the instant case. We noted that the expert in that case was a qualified expert who had conducted extensive interviews with the defendant and was thereby able to render an expert opinion "that would have assisted the jury in determining whether defendant would adjust well to prison life." *Id.* at 86, 451 S.E.2d at 557.

The State argues that *Skipper* and *Rouse* are satisfied because here the expert did testify that the defendant adjusted well to prison life in the past; he experienced no problems at Central Prison prior to trial; he functioned well in a structured prison environment; and he could be productive in such an environment. Therefore, the trial court did not err in omitting the expert's opinion that the defendant was not dangerous. We disagree.

The expert's opinion is relevant and would aid the jury in its sentencing recommendation. The evidence should have been admitted. Because we have already granted the defendant a new sentencing hearing, we do not reach the issue of whether this error is harmless.

NEW CAPITAL SENTENCING PROCEEDING.