STATE OF NORTH CAROLINA v. JEFFREY W. HARDIN, Defendant

No. COA03-132

(Filed 2 December 2003)

**Constitutional Law; Jury— trial by twelve person jury—seating of alternate juror**

A defendant was entitled to a new trial where a juror was replaced by an alternate juror after deliberations were begun, which resulted in a verdict by more than twelve people. N.C. Const. art. I, § 24.

Appeal by defendant from judgment entered 24 July 2002 by Judge Ola M. Lewis in Robeson County Superior Court. Heard in the Court of Appeals 8 October 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Michael D. Youth, for the State.*

*Michelle FormyDuval for defendant-appellant.*

ELMORE, Judge.

Jeffrey W. Hardin (defendant) appeals from judgments entered upon jury verdicts finding him guilty of conspiracy to commit breaking, entering and larceny; felonious breaking and entering; felonious larceny; and being a habitual felon. For the reasons stated herein, we conclude that defendant is entitled to a new trial.

The evidence presented at trial tended to show that in the early morning hours of 24 May 1999 Officer John Simmons (Officer Simmons), then a Robeson County sheriff's deputy, responded to a call concerning a possible break-in at a mobile home. Officer Simmons testified that when he arrived at the scene, two males, later identified as Montray Howell and Harley Chavis, emerged from the mobile home and fled on foot. Officer Simmons then observed a pickup truck parked in the mobile home's back yard with its lights off, the tailgate down, and a refrigerator in its bed. A moving dolly lay on the ground beside the truck. Defendant was standing at the rear of the pickup, and Wanda Chavis was sitting in the passenger seat. After placing defendant and Wanda Chavis under arrest, Officer Simmons discovered the mobile home's sliding rear glass door had been broken out and that the refrigerator appeared to have been removed from inside.

Detective Sterile Little (Detective Little) of the Robeson County Sheriff's Office testified that he interviewed defendant following defendant's arrest. Defendant, who is blind, told Detective Little that someone had come by defendant's house offering to sell defendant a refrigerator for $100.00 worth of crack cocaine. Defendant, believing he could turn around and sell the refrigerator for $400.00, arranged for Wanda Chavis, Howell, and Harley Chavis to assist him in picking up the refrigerator later that night. Detective Little testified that the plan was for Howell and Harley Chavis to go to the mobile home and remove the refrigerator, while defendant and Wanda Chavis were to arrive shortly thereafter with the truck.

Jacqueline Thompson (Thompson) testified that on 24 May 1999 she owned the mobile home in question, though it was unoccupied at the time. She testified that she had not given anyone permission to

enter the mobile home or to remove the refrigerator, and that she did not know defendant, Wanda Chavis, Harley Chavis, or Howell.

After the trial court denied defendant's motion to dismiss and instructed the jury, the jury began its deliberations. The transcript reveals that the trial court, after stating "I don't like to release alternates until I get a verdict," failed to release the lone alternate juror prior to submitting the case to the jury. The jury failed to return a verdict before the evening recess. The next morning, one of the jurors was dismissed after disclosing that she had discussed the case with a friend the previous evening. The trial court then stated as follows:

> Good morning Ladies and Gentlemen of the jury. Due to circumstances beyond our control, we have lost . . . [juror] number 12. Which means [alternate juror], see why I had you stick around. . . . You now become juror number 12. And will join your fellow jurors in deliberation in this case. . . .

The jury, with the alternate taking the dismissed juror's place, resumed deliberations and thereafter returned verdicts convicting defendant on all four charges. The trial court imposed sentences of 125-159 months for each conviction, with the sentences to run concurrently. Defendant appeals.

By his first assignment of error, defendant contends the trial court committed reversible error by replacing a juror with the alternate juror after deliberations had begun. We agree.

In the present case, we are bound by our Supreme Court's decision in *State v. Bunning*, 346 N.C. 253, 485 S.E.2d 290 (1997). In *Bunning*, the jury began its capital sentencing deliberations in the afternoon and continued until the evening recess. The next morning, one of the jurors said she could not continue with the trial because she was a manic-depressive and asked to be excused. The court removed this juror, replaced her with an alternate, and instructed the jury to begin its deliberations anew. The jury then recommended the death penalty. In holding that the defendant was entitled to a new capital sentencing proceeding, our Supreme Court stated as follows:

> . . . Article I, Section 24 of the North Carolina Constitution, which guarantees the right to trial by jury, contemplates no more or less than a jury of twelve persons.

> In this case, the jury verdict was reached by more than twelve persons. The juror who was excused participated in the delibera-

tions for half a day. We cannot say what influence she had on the other jurors, but we have to assume she made some contribution to the verdict. The alternate juror did not have the benefit of the discussion by the other jurors which occurred before he was put on the jury. We cannot say he fully participated in reaching a verdict. In this case, eleven jurors fully participated in reaching a verdict, and two jurors participated partially in reaching a verdict. This is not the twelve jurors required to reach a valid verdict in a criminal case. . . . If alternate jurors must be discharged when the case is submitted to the jury, they cannot be substituted for jurors who subsequently become incapacitated.

*Bunning*, 346 N.C. at 256, 485 S.E.2d at 292; *see also* N.C. Gen. Stat. § 15A-1215(a) (2001) ("Alternate jurors receive the same compensation as other jurors and, unless they become jurors, must be discharged upon the final submission of the case to the jury.")

In the present case, as in *Bunning*, the trial court replaced a regular juror with an alternate after deliberations had begun, which resulted in a jury verdict reached by more than the constitutionally-mandated twelve persons. Moreover, we cannot employ a harmless error analysis here, and the fact that defendant did not object to substitution of the alternate juror is of no consequence, because "[a] trial by a jury which is improperly constituted is so fundamentally flawed that the verdict cannot stand." *Bunning*, 346 N.C. at 257, 485 S.E.2d at 292.

Because we hold that defendant is entitled to a new trial, we need not address defendant's remaining assignments of error.

New trial.

Judges TIMMONS-GOODSON and HUDSON concur.