IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-972

Filed 18 June 2024

Alamance County, No. 17CRS56552

STATE OF NORTH CAROLINA

v.

JALEN O'KEITH WATLINGTON, Defendant.

Appeal by defendant from judgment entered on or about 27 April 2022 by Judge David T. Lambeth Jr. in Superior Court, Alamance County. Heard in the Court of Appeals 8 August 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Donna B. Wojcik, for the State.*
>
> *Thomas, Ferguson & Beskind, LLP, by Kellie Mannette and Jay H. Ferguson, for defendant-appellant.*

STROUD, Judge.

Defendant appeals his judgment for assault by pointing a gun and discharging a weapon into an occupied vehicle. Defendant did not object to the substitution of a juror after deliberations had begun, and the jury was properly constituted, impaneled, and instructed under North Carolina General Statute Section 15A-1215(a). Nonetheless, on appeal Defendant has challenged North Carolina General Statute Section 15A-1215(a) as unconstitutional, and based on *State v. Chambers*, ___ N.C. App. ___, 898 S.E.2d 86 (2024) and *In re Civil Penalty*, 324 N.C. 373, 379 S.E.2d

30 (1989), we have no choice but to vacate Defendant's convictions and judgment and remand for a new trial on all charges.

## I.    Background

The State's evidence tended to show that on 30 November 2017, Mr. Brandon Miles and Ms. Racshell Carr were driving in a Chevrolet. Defendant was driving a Toyota and backed into the Chevrolet's line of travel, causing Mr. Miles to swerve out of the way to avoid a collision. Immediately after this near collision, at a stop light, Defendant and Defendant's passenger both pulled out guns. Ms. Carr called the police. The occupants of the two cars exchanged words at the next light, and by that time, Ms. Carr was on the phone with the police, and they told her to get Defendant's tag number.

The vehicles then separated, driving onto different streets, but Mr. Miles eventually turned around to get Defendant's tag number. When Mr. Miles found the Toyota, Defendant and his passenger were both waiting at a stop sign with their guns displayed. Shots were fired at Mr. Miles and Ms. Carr, who ducked.

On or about 2 July 2018, Defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI") and discharging a weapon into an occupied vehicle ("firing into a vehicle"). After a seven day trial, the jury found Defendant "guilty of assault by pointing a gun[.]" (Capitalization altered.) The jury also found Defendant guilty of firing into a vehicle. The trial court entered judgment; Defendant appealed.

## II.    Juror Substitution

After all evidence had been presented in the case, on 25 April 2022 at about 4:11 pm, the jury was sent to the jury room to select a foreperson and begin deliberations.  At about 4:50 pm, the jury sent the trial court a request to see some exhibits, and the jury was brought back to the courtroom.  The alternate jurors were also present.  Three of the State's exhibits were published to the jury, and they were sent home at 5:00 pm and told to return at 9:30 am the next morning.

On 26 April 2022, Juror No. 10 was missing.  The clerk contacted Juror No. 10 and she informed the trial court she had recently injured her foot resulting in swelling, a trip to the emergency room, and doctor's instructions to stay off the foot. The trial court was concerned about the juror's ability to concentrate on the case; the trial court spoke to counsel for the State and Defendant, and neither objected to Juror No. 10 being released and seating the first alternate juror.  In deciding to seat the alternate juror, the trial court referred specifically to North Carolina General Statute Section 15A-1215(a), which became effective on 1 October 2021.  *See* N.C. Gen. Stat. § 15A-1215 (2023) (Editor's Note).

In accord with North Carolina General Statute Section 15A-1215(a), the trial court instructed the jury to begin deliberations anew.  The trial court further instructed, "This means you should disregard entirely any deliberations taking place before the alternative juror was substituted and consider freshly the evidence as if the previous deliberations had never occurred" and

> [a]lthough starting over may seem frustrating, please do not let it discourage you. It is important to our system of justice that each juror has a full and fair opportunity to explore his or her views and respond to the views of others so that you may come to a unanimous verdict. All the previous instructions given to you, including the unanimity requirement for a verdict, remain in effect.

The twelve jurors then started deliberations at 10:17am on 26 April 2022.

Defendant contends "the trial court violated Article I, Section 24 of the North Carolina Constitution when it allowed an alternate juror to substitute for Juror #10 on the second day of deliberations." (Capitalization altered.) Defendant specifically argues a 2021 amendment to North Carolina General Statute Section 15A-1215 allowing a juror to be replaced with an alternate even after deliberation has begun, with instructions to begin deliberations anew, is unconstitutional. The State argues Defendant failed to preserve his constitutional argument because he did not object to the substitution of the juror. The State relied in part upon the only case addressing this issue as of the date the State filed its brief, an unpublished case from this Court in April 2023, *State v. Poole*, which determined the defendant had waived his constitutional argument by failure to object to the juror substitution or to raise any constitutional argument regarding the amendment to North Carolina General Statute Section 15A-1215(a) at trial:

> Effective 1 October 2021, the General Assembly amended N.C. Gen. Stat. §§ 15A-1215 and 15A-1221 to permit an alternate juror to replace a regular juror after deliberations have begun. 2021 N.C. Sess. Laws 374, 374-

75, ch. 94, §§ 1-2. The General Assembly added, among other language, the following: "[i]f an alternate juror replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." N.C. Gen. Stat. § 15A-1215(a) (2021). On appeal, defendant presents the question of whether the 2021 amendment to N.C. Gen. Stat. § 15A-1215(a) permitting substitution of an alternate juror after jury deliberations have begun violates Article I, Section 24 of the North Carolina Constitution.

"It has never been doubted that the Constitution of this State requires a unanimous verdict for a valid conviction for any crime." *State v. Williams*, 286 N.C. 422, 427, 212 S.E.2d 113, 117 (1975). "Article I, Section 24 of the North Carolina Constitution, which guarantees the right to trial by jury, contemplates no more or less than a jury of twelve persons." *State v. Bunning*, 346 N.C. 253, 256, 485 S.E.2d 290, 292 (1997). Defendant's constitutional challenge to N.C. Gen. Stat. § 15A-1215(a) (amended 2021) appears to be an issue of first impression in this State. We first address whether defendant's constitutional claim is preserved for appellate review.

At trial, defendant did not object to the alternate juror substitution, nor did he argue that N.C. Gen. Stat. § 15A-1215(a) (amended 2021) is unconstitutional. "While Appellate Rule 10([a])(1) protects judicial economy and speaks to our adversarial system of justice by requiring the parties to object in the majority of instances, it nevertheless recognizes that some questions may be deemed preserved for review by rule or law." *State v. Wilson*, 363 N.C. 478, 486, 681 S.E.2d 325, 331 (2009). Defendant cites to *State v. Ashe*, for its general rule that where "the error violates [a] defendant's right to a trial by a jury of twelve, [a] defendant's failure to object is not fatal to his right to raise the question on appeal." 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985) (citations omitted).

However, we are not persuaded that the holding in *Ashe* compels a determination that defendant's issue is preserved for review notwithstanding his counsel's failure to object at trial. In *Ashe*, the Court's determination on the issue of preservation was based on the well-established principle that "when a trial court *acts contrary to a*

> *statutory mandate* and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial." 314 N.C. at 39, 331 S.E.2d at 659 (emphasis added).

Our Supreme Court's holding in *Ashe* was narrow and specific, stating:

> Both Art. I, § 24 of the North Carolina Constitution and N.C.G.S. § 15A-1233(a) require the trial court to summon all jurors into the courtroom before hearing and addressing a jury request to review testimony and to exercise its discretion in denying or granting the request. Under the principles stated above, *failure of the trial court to comply with these statutory mandates* entitles defendant to press these points on appeal, notwithstanding a failure to object at trial.

*Id.* at 40, 331 S.E.2d at 659 (emphasis added). We note that this is the only time *Ashe* mentions the North Carolina Constitution. The Court in *Ashe* addressed the question of whether the trial court had failed to comply with the statutory mandate in N.C. Gen. Stat. 15A-1233(a). This mandate, when considered together with Article 1, Section 24 of the North Carolina Constitution, imposed dual requirements on the trial court. The Court did not discuss a constitutional violation; it only addressed a statutory violation.

No. COA22-836 (unpublished) (April 18, 2023) slip op. at *3-5.

Although *State v. Poole* was unpublished and thus has no precedential value, N.C. R. App. P. 30(e)(3) ("An unpublished decision of the North Carolina Court of Appeals does not constitute controlling legal authority."), this Court in *Poole* noted the case appeared to present "an issue of first impression[.]" *Poole* at *4.

Again, in May 2023, this Court issued another unpublished opinion, *State v.*

*Turner*, rejecting the defendant's attempt to

> raise—for the first time on appeal—a belated facial
> constitutional challenge to N.C. Gen. Stat. § 15A-1215(a).
> This he is not permitted to do. *See State v. Lloyd*, 354 N.C.
> 76, 86-87, 552 S.E.2d 596, 607 (2001) (citation omitted)
> ("Constitutional issues not raised and passed upon at trial
> will not be considered for the first time on appeal.")

No. COA22-887 (unpublished) (May 16, 2023) slip op. at *7.

A few months later, in September 2023, in *State v. Lynn*, a published case, in line with *Poole*, No. COA22-836 and *Turner*, No. COA22-887, determined the defendant failed to preserve his constitutional argument to a juror substitution under North Carolina General Statute Section 15A-1215(a) because the defendant's counsel did not object:

> Defendant asserts the trial court erred by substituting an
> alternate juror after deliberations began. Specifically,
> Defendant argues the jury verdict was reached by more
> than twelve persons, and thus the verdict violates the
> North Carolina Constitution. Defendant also argues N.C.
> Gen. Stat. § 15A-1215(a), itself, violates the North Carolina
> Constitution. After careful consideration, we conclude that
> Defendant failed to preserve these arguments for appellate
> review.
>    A party must timely object to the trial court in order
> to preserve an issue for appellate review. Generally,
> constitutional issues not raised in the trial court are
> abandoned on appeal.
>    Here, Defendant did not object to the alternate-juror
> substitution or to the constitutionality of N.C. Gen. Stat. §
> 15A-1215(a), the statute authorizing the substitution. In
> fact, when the trial court asked whether there were any
> concerns regarding the trial court's plan to substitute the
> alternate juror, Defendant's counsel said no.
>    Therefore, Defendant failed to preserve this issue for

appellate review under Rule 10. Accordingly, we dismiss Defendant's arguments because the asserted alternate-juror issues are not properly before this Court.

*State v. Lynn*, 290 N.C. App. 532, 536, 892 S.E.2d 883, 886 (2023) (citations, quotation marks, and brackets omitted).

But most recently, in February 2024, in *State v. Chambers*, this Court addressed a defendant's constitutional argument challenging North Carolina General Statute Section 15A-1215(a) on appeal, despite the defendant's failure to object at trial, and determined, mostly based upon *State v. Bunning*, 346 N.C. 253, 485 S.E.2d 290 (1997) and "*Bayard v. Singleton*, 1 N.C. 5 (1787)[,]" that North Carolina General Statute Section 15A-1215(a) is unconstitutional:

> We note that, in 2021, our General Assembly amended a statute to provide that if an alternate juror replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew. In no event shall more than 12 jurors participate in the jury's deliberations. N.C. Gen. Stat. § 15A-1215(a). However, where a statute conflicts with our state constitution, we must follow our state constitution. *Bayard v. Singleton*, 1 N.C. 5 (1787). Our General Assembly cannot overrule a decision by our Supreme Court which interprets our state constitution. *See State ex rel. Martin v. Preston*, 325 N.C. 438, 449, 385 S.E.2d 473, 479 (1989) (Issues concerning the proper construction and application of North Carolina laws and the Constitution of North Carolina can only be answered with finality by our Supreme Court.).
>
> Under existing precedent, we are compelled to conclude that Defendant's right to a properly constituted jury under our state constitution was violated and that this issue is preserved, notwithstanding Defendant's failure to object at trial. Accordingly, Defendant is entitled to a new trial.

*State v. Chambers*, ___ N.C. App. ___, ___, 898 S.E.2d 86, 88 (2024) (quotation marks, brackets, heading, and footnote omitted).

*Chambers* goes on, in footnote 1, to note it conflicts with *Lynn*, 290 N.C. App. 532, 892 S.E.2d 883, but states the issue was controlled by the older case of *State v. Hardin*, 161 N.C. App. 530, 588 S.E.2d 569 (2003). But *Hardin* is a 2003 case, and as noted in *Chambers*, "in *2021*, our General Assembly amended" North Carolina General Statute Section 15A-1215(a). *Chambers*, ___ N.C. App. at ___, 898 S.E.2d at 88 (emphasis added). Thus, *Hardin* was published approximately 18 years *before* the amendment at issue. *See generally* N.C. Gen. Stat. § 15A-1215(a) (2021); *Hardin*, 161 N.C. App. 530, 588 S.E.2d 569 (2003).

Still, without any analysis of the cases or statutory provisions governing juror selection or impaneling the jury, the *Chambers* Court cited to *Hardin* as precedent in footnote 1 and acknowledges *Lynn*, leaving us with a conflict governed by *In re Civil Penalty* which

> stands for the proposition that, where a panel of this Court has decided a legal issue, future panels are bound to follow that precedent. This is so even if the previous panel's decision involved narrowing or distinguishing an earlier controlling precedent—even one from the Supreme Court—as was the case in *In re Civil Penalty*. Importantly, *In re Civil Penalty* does not authorize panels to overrule existing precedent on the basis that it is inconsistent with earlier decisions of this Court.

*State v. Gonzalez*, 263 N.C. App. 527, 531, 823 S.E.2d 886, 888-89 (2019) (citing *In re*

*Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989)).

The *Chambers* Court did not explain *how* or *why* a verdict delivered in open court by a properly constituted and instructed jury of twelve in compliance with North Carolina General Statute Section 15A-1215(a) violates article I, Section 24 of the North Carolina Constitution. *See generally Chambers*, ___ N.C. App. ___, 898 S.E.2d 86. The many issues arising from *Chambers* have been noted by the School of Government with the University of North Carolina at Chapel Hill ("SOG"): "This post will review the holding in *Chambers*, the precedent upon which it relied, and the provisions of G.S. 15A-1215(a) that *Chambers*, if it remains undisturbed, effectively eviscerates." Shea Denning, *Court of Appeals Holds that State Constitution Prohibits Substitution of Alternate Jurors after Deliberations Begin*, N.C. Crim. L.[:] A UNC Sch. of Gov't Blog (Mar. 14 2024), https://nccriminallaw.sog.unc.edu/court-of-appeals-holds-that-state-constitution-prohibits-substitution-of-alternate-jurors-after-deliberations-begin/#more-18388 *as of* 12 April 2024. The SOG article also thoroughly reviews cases addressing juror substitution, the role of *State v. Bunning*, 346 N.C. 253, 485 S.E.2d 290 (1997), and the 2021 amendment to North Carolina General Statute Section 15A-1215(a). *See* Denning.

Even as this panel deliberated on how to attempt to resolve the *In re Civil Penalty* dilemma presented by this case – a difficult task, as evidenced by our three opinions – in April of 2024, this Court issued the unpublished opinion of *State v.*

*White*, relying on *Chambers*.[1]  No. COA23-596 (April 2, 2024) (unpublished), slip op. at *8.

We also note that our Supreme Court may soon address the issue of the constitutionality of the statutory amendment allowing substitution of a juror and whether a defendant must object to the substitution to raise an issue on appeal, since a temporary stay was allowed in *Chambers*, ___ N.C. ___, 897 S.E.2d 668 (2024) in March of 2024.  Indeed, on 6 March 2024, the State filed a Petition for Writ of Supersedeas and Application for Temporary Stay in the *Chambers* case.  In support of the temporary stay, the State alleged in part:

> To allow this Court time to determine whether to accept this case for review under § 7A-31, this Court should issue a temporary stay. Then, pending review, this Court should issue a writ of supersedeas. Absent issuance of such stays, the trial court will vacate Defendant's convictions and conduct a new trial. Such actions would moot the issues the State seeks to bring forward on discretionary review. Moreover, this opinion is the first to directly address the constitutionality of a recent amendment to N.C.G.S. § 15A-1215(a). And the court declared it unconstitutional. Permitting such an opinion to stand pending this Court's review would frustrate and confuse both practitioners and judges faced with a potential juror substitution during deliberations.

On 7 March 2024, the Supreme Court issued a temporary stay in the *Chambers* case.  On 26 March 2024, the State filed a petition for discretionary review by the

---

[1] *State v. White*, slip op. at *8, notes *Chambers* as unpublished though at this time it is a published case.

Supreme Court, but as of the date of this opinion, the Supreme Court has not yet granted certiorari and this Court, along with "practitioners and [trial] judges faced with" the issue of a juror substitution, remains bound by *Chambers* as a controlling precedent even though the defendant in *Chambers* may not yet have a new trial due to the stay issued in that case.

In this regard, we will respond to the concurring opinion of Judge Griffin, which begins by attempting to place blame for delay in the filing of this opinion and seeks to minimize the impact *Chambers* may have upon the operation of our trial courts, as rulings from this Court require them to hold new trials in complex criminal cases based upon *Chambers* even as no new trial is yet allowed in the *Chambers* case itself. The initial, simple draft of this Court's opinion was prepared just before *Chambers* was filed and it relied upon *Lynn*, 290 N.C. App. 532, 892 S.E.2d 883. Similar or even the same issues are often pending before different panels of this Court, and here, as is normally the case, one panel is unaware of the details or issues of cases simultaneously being considered by other panels until the final opinion is filed. But before this opinion was completed, *Chambers* was filed, then withdrawn, amended, and refiled, thus necessitating revision of this opinion. Due to the stay of *Chambers* by the Supreme Court of North Carolina, as well as the number of cases presenting the same issue regarding a juror substitution pending before this Court which are controlled by *Chambers*, we considered whether this opinion should be held in abeyance pending a ruling in *Chambers* by the Supreme Court.

This Court has often held cases in abeyance pending resolution of another pending case before this Court presenting the same issue or awaiting a ruling in a case under review by the Supreme Court. *See, e.g., State v. Daw*, 277 N.C. App. 240, 245, 860 S.E.2d 1, 7 (2021) ("There are a number of petitions pending with our Court that have been held in abeyance until we issue an opinion in this case. Resolution of the questions presented by this appeal on the merits would therefore clearly affect members of the public beyond just the parties in the immediate case. Accordingly, we hold that the public interest exception applies and will proceed to address the merits of the case." (quotation marks and citation omitted)) *writ of supersedeas and disc. rev. allowed*, ___ N.C. ___, 883 S.E.2d 457 (2023); *State v. Thomsen*, 242 N.C. App. 475, 483, 776 S.E.2d 41, 47 (2015) ("On 24 February 2015, Defendant submitted to this Court a Motion to Hold Appeal in Abeyance Pending Determination of *State v. Stubbs* by the North Carolina Supreme Court. *Stubbs* was heard in the North Carolina Supreme Court on 13 January 2015. In his motion, Defendant contended *Stubbs* will resolve the issue of whether the Court of Appeals has jurisdiction to review an order of the trial court granting appropriate relief via writ of *certiorari*. On 9 March 2015, the State filed a response, opposing Defendant's motion to hold the appeal in abeyance. On 16 March 2015, we granted Defendant's motion, and ordered the appeal held in abeyance pending the resolution of *State v. Stubbs*. On 10 April 2015, the Supreme Court issued its opinion in S*tate v. Stubbs*, 568A03-02. Following this decision we reviewed this case without further briefing from the parties.").

But as our Supreme Court has not yet taken action in *Chambers* beyond granting the stay, we have no way of knowing if or when a ruling on that case may be forthcoming so we have decided not to hold this case in abeyance. As we remain bound by *Chambers* and *In re Civil Penalty*, we vacate Defendant's judgment and remand for a new trial. *See Chambers*, ___ N.C. App. at ___, 898 S.E.2d at 88 (determining the defendant preserved his issue to juror substitution without objection, concluding North Carolina General Statute Section 15A-1215(a) is unconstitutional, and mandating the defendant receive a new trial); *In re Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30.

## III. Conclusion

For the reasons discussed above, Defendant must receive a new trial.

NEW TRIAL.

Judge ARROWOOD concurs in the result only by separate opinion.

Judge GRIFFIN concurs by separate opinion.

ARROWOOD, Judge, concurring in result only.

I concur in the majority opinion because I agree that *State v. Chambers*, 898 S.E.2d 86 (2024) dictates, and we are bound by its result pursuant to *In re Civil Penalty*, 324 N.C. 373 (1989). However, I write to express my opinions regarding the *Chambers* decision, the jurisprudence it was based on, and its implications.

First, I think that *Chambers* itself violated *In re Civil Penalty* when it ignored *State v. Lynn*, 290 N.C. App. 532 (2023) to find that the issue was properly preserved. In my opinion, the *Chambers* panel's reliance on *State v. Hardin*, 161 N.C. App. 530 (2003), to circumvent *Lynn* is without merit. *Hardin*, which was decided years before this issue was before the court *and* before the 2021 amendment, in no way speaks to this issue, much less contradicts *Lynn* and the unpublished opinions it references.

*Chambers*' reliance on *State v. Bunning*, 346 N.C. 253 (1997) is also notable. In that case, after a day of capital sentencing deliberations, a juror asked to be excused because of an illness. *Bunning*, 346 N.C. at 255. The juror was subsequently replaced with an alternate, and the trial court instructed the jury to begin its deliberations anew—after which the jury recommended the death penalty. *Id.* The defendant appealed, arguing that the trial court erred by substituting an alternate juror for a juror who was excused only after deliberations had commenced. *Id.*

The *Bunning* Court agreed, reasoning the verdict "was reached by more than twelve persons[,]" and it had to be assumed that the excused juror "made some contribution to the verdict." *Id.* at 256. Although *Bunning* began its analysis by

citing Article 1, Section 24 of the North Carolina Constitution and *State v. Bindyke*, 288 N.C. 608 (1975),[2] the Court proceeded to discuss the intent of the General Assembly. *See id.* at 256–57. Notably, in analyzing N.C.G.S. § 15A-1215(a) (as it was written at the time) and N.C.G.S. § 15A-2000(a)(2), the *Bunning* Court found these "sections clearly show that the General Assembly did not intend that an alternate can be substituted for a juror after the jury has begun its deliberations." *Id.* at 257.

Although the *Bunning* Court concluded that the substitution was indeed an error and granted the defendant a new sentencing hearing, it is unclear whether our Supreme Court applied a constitutional or statutory rule. *See id.* at 256–57. If the substitution of an alternate juror violates the face of Section 24 of the Constitution, it is unclear to me why the Court proceeded with a lengthy statutory analysis and weighed the General Assembly's intent. However, if we are to consider the General Assembly's intent, the 2021 amendment certainly seems to show that the General Assembly now intends to allow for jury substitution after deliberations begin—at least in the guilt or innocence phase of the trial. Also of note, *Bunning* dealt with a capital proceeding, whereas the 2021 amendment addresses rules governing the substitution of alternate jurors in non-capital proceedings, not capital ones.

---

[2] In *Bindyke*, the alternate juror was present in the jury room during deliberations, *with the original twelve jurors*, which "negate[d] a defendant's right to trial by jury . . . of twelve in the inviolability, confidentiality and privacy of the jury room." 288 N.C. at 626–27.

I find these facts notable because in North Carolina, the same jury is required to decide both guilt or innocence and then decide if the crime for which they found the defendant guilty warrants the imposition of the death penalty. In *Bunning*, one jury found the defendant guilty of the crime, and because of the substitution during the penalty phase, a different jury determined the penalty. Because guilt had already been determined, the jury could not truly begin deliberations again since eleven of the twelve had already determined guilty, and nothing the substitute juror said or contributed could have changed that. Thus, more than twelve individuals contributed to the verdict. Conversely, in the present case, the jury had not determined defendant's guilt before the substitution; accordingly, in my view, the jury that determined defendant was guilty was properly constituted.

Second, I disagree that N.C.G.S. § 15A-1215(a) as amended violates a defendant's constitutional right to a jury of their peers. I believe the trial court's instructions that deliberation must begin anew once a substitution occurs protect that right. The *Chambers* panel seems to reason that we cannot rely upon a jury to do this. Such reasoning would serve to upend decades of our state's jurisprudence that it is presumed that the jury will follow the trial court's instructions. *E.g., State v. McCarver*, 341 N.C. 364, 384 (1995) ("Jurors are presumed to follow a trial court's instructions."). If we cannot rely upon the jury to do so in this case, how can we presume that juries will do so in other cases?

Thus, I concur in the result only.

3

GRIFFIN, Judge, concurring by separate opinion.

Although the instant case was heard 8 August 2023, nearly six months prior to *State v. Chambers*, ___ N.C. App. ___, 898 S.E.2d 86 (2024), the Court filed its opinion in *State v. Chambers* first, thereby establishing precedent. *See In re Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989). Thus, the lead opinion, while seemingly displeased with the Court's prior decision in *State v. Chambers*, recognizes that because it was delayed in executing this opinion, it is now bound by the Court's holding in *Chambers*.

I too am bound by the Court's prior decision in *Chambers* and therefore agree with the result of the lead opinion here. Nonetheless, I write separately as I disagree with the lead opinion's disparaging tone and find its interpretation of the Court's opinion in *Chambers* to be at the very least unclear, if not fundamentally misleading.

The lead opinion repeatedly attacks the Court's opinion in *Chambers*, stating the opinion lacks analysis and further fails to "explain *how* or *why* a verdict delivered in open court by a properly constituted and instructed jury of twelve in compliance with [N.C. Gen. Stat. § 15A-1215(a)] violates [Article I, Section 24] of the North Carolina Constitution." I disagree.

The *Chambers* Court, while admittedly weaving the two issues together, clearly addresses: (1) Whether the defendant, despite his failure to object at trial, preserved his contentions regarding the alternate-juror substitution and the constitutionality of N.C. Gen. Stat. § 15A-1215(a) for appellate review; and (2)

Whether an alternate-juror substitution after deliberations have begun and/or the General Assembly's 2021 amendment to N.C. Gen. Stat. § 15A-1215(a) violates our State Constitution.

In addressing whether the defendant preserved his contentions for appellate review, the *Chambers* Court specifically noted the existence of a conflict between the Court's opinions in *State v. Hardin*, 161 N.C. App. 530, 588 S.E.2d 569 (2003), and *State v. Lynn*, 290 N.C. App. 532, 892 S.E.2d 883 (2023).

In *State v. Hardin*, the defendant, despite having failed to object at trial, argued the trial court erred in making an alternate-juror substitution after deliberations had begun. 161 N.C. App. at 532, 588 S.E.2d at 571. The *Hardin* Court held a defendant's failure to object to an alternate-juror substitution was of no consequence as "[a] trial by a jury which is improperly constituted is so fundamentally flawed that the verdict cannot stand." *Id.* at 533, 588 S.E.2d at 571 (internal marks and citation omitted).

In *State v. Lynn*, the Court was faced with a similar issue. The defendant, despite having failed to object at trial, argued the jury verdict against him was reached by more than twelve jurors because the trial court made an alternate-juror substitution after deliberations had begun. 892 S.E.2d at 886, 290 N.C. App. at 537. The defendant also challenged the constitutionality of N.C. Gen. Stat. § 15A-1215(a). However, unlike the *Hardin* Court, the *Lynn* Court held, because the defendant

2

neither objected to the substitution nor the constitutionality of N.C. Gen. Stat. § 15A-1215(a) at trial, he failed to preserve his arguments for appellate review. *Id.*

The *Chambers* Court, in identifying the direct conflict between *Hardin* and *Lynn*, cited to *State v. Gonzalez*, 263 N.C. App. 527, 531, 823 S.E.2d 886, 888 (2019). In *Gonzales*, the Court acknowledged that generally, where a panel of this Court has previously decided a legal issue, a subsequent panel of this Court "'is bound by that precedent, unless it has been overturned by a higher court.'" *Id.* at 531, 823 S.E.2d at 888 (quoting *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989)). However, *Gonzalez* also recognized our Supreme Court has authorized this Court, when faced with two irreconcilable precedents, to disregard the more recent precedent. *Id.* at 531, 823 S.E.2d at 889 ("These arise when two lines of irreconcilable precedent develop independently—meaning the cases never acknowledge each other or their conflict, as if ships passing in the night.") Thus, it follows that where *Lynn* and *Hardin*—two cases decided by this Court which contemplate the same issue—directly conflict, with *Lynn* failing to acknowledge *Hardin*, the *Chambers* Court was authorized to disregard *Lynn* and follow *Hardin* in deciding whether the defendant's contentions were preserved for appellate review.

The lead opinion seems to suggest the *Chambers* Court erroneously relied on *Hardin*, noting "it was published approximately 18 years *before* the amendment at issue." However, the lead opinion's position here is misleading as the 2021 amendment is irrelevant to the *Chambers* Court's application of *Hardin*. Although

*Hardin* was decided on similar issues to those presented in *Chambers*, the *Chambers* Court relied on *Hardin* only in determining whether the defendant had preserved his issues for appellate review, not in determining the constitutionality of the 2021 amendment.

In addressing the defendant's contention regarding the constitutionality of the 2021 amendment, the *Chambers* Court relied primarily on the Court's decision in *State v. Bunning*, 346 N.C. 253, 485 S.E.2d 290 (1997). In *Bunning*, the trial court made an alternate-juror substitution after deliberations had begun in a sentencing hearing and instructed the jury to begin its deliberations anew. 346 N.C. at 255, 485 S.E.2d at 291. On appeal, the Court stated Article I, Section 24 of the North Carolina Constitution contemplates no more or less than a jury of twelve persons. *Id.* at 256, 485 S.E.2d at 292. Further, the Court held, regardless of the trial court's instruction to begin its deliberations anew, the jury verdict was reached by more than twelve persons as the substitution was made after deliberations had begun and therefore "eleven jurors fully participated in reaching a verdict, and two jurors participated partially in reaching a verdict." *Id.* The Court then proceeded to discuss the intent of the General Assembly in analyzing N.C. Gen. Stat. § 15A-1215(a) and other relevant statutes. *Id.* at 256–57, 485 S.E.2d at 292. However, it is unclear whether the Court intended this statutory analysis to have any implication on its interpretation of Article I, Section 24, or whether it existed as a separate analysis altogether.

4

Since the Court's opinion in *Bunning*, N.C. Gen. Stat. § 15A-1215(a) has been amended, effectively invalidating the *Bunning* Court's interpretation of the previous version of that statute. Nonetheless, this Court is still seemingly bound by the *Bunning* Court's interpretation of Article I, Section 24, as our Constitution remains unchanged. Thus, insofar as the *Bunning* Court held, based on its interpretation of Article I, Section 24, it was unconstitutional for the trial court to make an alternate-juror substitution after deliberations had begun, the *Chambers* Court was required to hold the same.

For this reason, the *Chambers* Court highlighted the dichotomy between the Court's opinion in *Bunning* and the 2021 amendment to N.C. Gen. Stat. § 15A-1215(a) which allows for an alternate-juror substitution after deliberations have begun. The *Chambers* Court then cited to the Supreme Court's opinion in *Bayard v. Singleton*, 1 N.C. 5, 3 N.C. 42, 1 Martin 48 (1787), and *State ex rel. Martin v. Preston*, 325 N.C. 438, 449, 385 S.E.2d 473, 479 (1989), merely to illustrate the issue before the *Chambers* Court: The 2021 amendment, based on the Court's constitutional interpretation in *Bunning*, impermissibly conflicts with Article I, Section 24, of our State Constitution and effectively overrules the *Bunning* Court's decision. *Chambers* then recognizes, regardless of its holding, the Supreme Court must resolve the issue raised by the appeal, noting: "[I]ssues concerning the proper construction and application of North Carolina laws and the Constitution of North Carolina can only be answered with finality by [our Supreme] Court." *Chambers*, ___ N.C. at ___, 898

S.E.2d at 88 (quoting *State ex rel. Martin*, 325 N.C. at 449, 385 S.E.2d at 479 (internal marks omitted)).

As an error-correcting Court, we could have resolved this matter with a brief, unpublished opinion. It is unfortunate the lead opinion chose to use this appeal to attack the *Chambers* Court at the cost of unnecessary delay while arriving at the same result, as we are bound by precedent until it is overruled.